# MARYLAND REPORTS.

## DECEMBER TERM, A. D., 1862.

### THE MAYOR & CITY COUNCIL OF BALTO., vs. H. R. and J. REYNOLDS.

PRINCIPAL AND AGENT.—The guiding principle in the construction of powers is to be derived from a consideration of the purpose, which the agent or depositary of power is appointed to accomplish.

Where an agent acts under special or express authority, whether written or verbal, the party dealing with him is *bound to know, at his peril,* what the power of the agent is, and to understand its legal effect, and if the agent exceed the boundary of his legal powers, the act, as concerns the principal is void.

The fact that the contract made, related to a subject within the general scope of an agent's powers, does not make it obligatory upon his principals, if there was a want of specific power to make it.

Although a private agent acting in violation of specific instructions, yet within the scope of a general authority may bind his principal, the rule as to the effect of a like act of an officer of a corporation is otherwise. In the former case the extent of the authority is necessarily known only to the principal and agent, while in the latter it is a matter of record in the books of the corporation, or of public law.

In cases of public agents, the Government or other public authority is not bound unless it manifestly appears that the agent is acting within the scope of his authority, or he is held out as having authority to do the act, or is employed in his capacity as a public agent to make the declaration on representation for the Government.

Municipal Corporations are not principals, but themselves agents, answerable to their constituents, and are not to be *presumed* to recognize, and incidentally ratify and confirm the acts of their officers done beyond the scope of their authority.

1    v. 20.

APPEAL from the Superior Court of Baltimore City:

This was an action brought by the appellees against the appellants on a special contract under seal, to recover certain profits which the appellees claim that they would have made upon said contract if they had not been stopped in its performance, and the contract itself set aside by the appellants; and also to recover damages for injury alleged to have been sustained by the appellees in their character as builders, from the conduct of the appellants. So much of the pleadings and evidence as is essential to a proper understanding of the points decided, is stated in the opinion of this Court.

The cause was argued before BOWIE, C. J., and GOLDSBOROUGH and COCHRAN, J.

(The Court in their opinion have considered only the issues raised by the first three pleas of the appellants. The other issues having been held by them not material to the disposition of the cause, the learned and elaborate arguments of counsel in relation to them have been here omitted.—REP.)

*Grafton L. Dulany,* for the appellants:

Admitting that the City Commissioner and other officials were aware of the departure from the contract and did not object to it, the Mayor and City Council would not have been compromised thereby. *Mayor & C. C. of Balto., vs. John Eschback,* 18 *Md. Rep.,* 282.

A waiver of the contract may be presumed from acts inconsistent therewith. The only redress for the appellees was on a *quantum meruit.*

The following authorities were cited on behalf of the appellants: *Mayor & C. C. of Balto. vs. Lefferman,* 4 *Gill,* 425. *Morris vs. Mayor & C. C. of Balto.,* 5 *Gill,* 244. *Parsons on Cont.,* 189. *Goodrich vs. Lafflin,* 1 *Pick.,* 57. *Hill*

DECEMBER TERM 1862.          3

The Mayor & C. C. of Balto., vs. Reynolds.

vs. *Green*, 4 *Pick.*, 116. *Simmons vs. Norton*, 7 *Bing.*, 271. *Rubery vs. Jervoise*, 1 *T. R.*, 133. *Henderson vs. Mayhew, et al.*, 2 *Gill*, 403. 3 *Phil. Ev.*, 331. *Bullit vs. Musgrave*, 3 *Gill*, 31. *Baker vs. Brannan*, 6 *Hill*, 47. *Lockwood vs. Thorne*, 1 *Kernan*, 170. *Cook's Lessee vs. Carroll*, 6 *Md. Rep.*, 111. *Showman, et ux., vs. Miller, et al., id.*, 479. *Ferris vs. Walsh*, 5 *H. & J.*, 308. *Whiteford vs. Munroe*, 17 *Md. Rep.*, 135. *Osceola Tribe Red Men vs. Roce*, 15 *Md. Rep.*, 296. *State vs. Reigart*, 1 *Gill*, 1. *Marshall vs. Hanna*, 4 *Md. Rep.*, 512. *Bilbie vs. Lumley*, 2 *East*, 469. *McLellan, et ux., vs. Kennedy, et al.*, 8 *Md. Rep.*, 239. *Shannon vs. Comstock*, 21 *Wend.*, 457. *Chamberlin vs. McAlister*, 6 *Dana*, 353, 355. *Spencer, vs. Halstead*, 1 *Denio.*, 602, 606.

*Wm. Schley*, for the appellees :

The validity of the contract of August 11th, 1856, is admitted by the other side, they contending that it was afterwards avoided and extinguished by the acts of the parties. The contract was authorized to be made by the City Commissioner by the resolution of July 8th, 1856. It was validly made, within the scope of the Commissioner's authority. The report of 1855 can have no influence on the construction of the Ordinance of 1856. And even if the act of the Commissioner, in any particular was *ultra vires*, still it was recognized in various ways as valid and binding, and especially by the Ordinance of December 31st, 1856. *Aldridge vs. Williams*, 3 *Howd.*, 24. *Bank of Columbia vs. Patterson*, 7 *Cranch.*, 299. *Bank of the U. S., vs. Dandridge*, 12 *Wh.*, 70, 83. *Union Bank vs. Ridgely*, 1 *H. & G.*, 325, 427.

Where a party is authorized to do a certain act without appeal, his act is conclusive. *State vs. Jarrett et al.*, 17 *Md. Rep.*, 309. *Phil. Wil. & Balto. R. R. Co. vs. Howard*, 13 *Howd.*, 307, 334.

The contract was a valid one; the stoppage of the work was a violation of the contract, and the damages we were

entitled to recover were such as the jury were to find from all the circumstances that we actually sustained.

Mr. Schley cited in the course of his argument the following authorities: *Watson on Arbitrators*, 8, 9 and 145, 59 *Law Lib. Walsh vs. Gilmor*, 3 *H. & J.*, 383, 395. *Randall vs. Glenn*. 2 *Gill*, 438, 439. *Northampton Gas Light Co., vs. Parnell*, 29 *Law & Eq. Rep.*, 229, *Allen vs. Milner*, 2 *Cromp. & Jerv.*, 47. Also *Gordon vs. Mitchell*, 4 *Eng. C. L. Rep.*, 432. *Leggo vs. Young*, 81 *Eng. C. L. Rep.*, 626 and 632. *Ebert vs. Ebert*, 5 *Md. Rep.*, 354 and 357. *Roloson vs. Carson*, 8 *Md. Rep.*, 208. Also *Snowden vs. Thomas*, 4 *H. & J.*, 335. *Geiser vs. Kershner*, 4 *G. & J.*, 305. *Jones vs. Ricketts*, 7 *Md. Rep.*, 108. *Campbell vs. Booth*, 8 *Md. Rep.*, 107.

*R. Johnson.* on the same side, maintained the following propositions :

1st. The plaintiffs are entitled to recover for all that was done or was being done under the original contract.

2nd. From the work being done there arose a presumed contract under which the plaintiffs were entitled to recover.

3rd. If the plaintiffs were entitled to recover under the original or a presumed contract, they were entitled to recover all they could have made in the way of profits, and they have done nothing to defeat that right.

In support of these propositions the following authorities were cited : On the first proposition, 3 *How.*, 24; *Jarrett vs. Harwood*, 17 *Md. Rep.*, 327; on the 2nd, *Dandridge vs. Bank of U. S.*, 12 *Wh.*, 69, 70. *Union Bank vs. Ridgely*, 1 *H. & G.*, 324.

*Wm Price*, for the appellant, in reply argued :

1st. That the plaintiffs below were never entitled to any profits at all under the contract.

2nd. That profits have been allowed and paid them when they were entitled to none.

Bowie, C. J., delivered the opinion of this Court:

The appellees sued the appellants, on a special contract under seal, entitled, "Articles of Agreement, made and concluded this 11th of August, in the year of our Lord one thousand eight hundred and fifty-six, between Joseph P. Shannon, City Commissioner, acting for and in behalf of the Mayor and City Council of Baltimore, of the first part, and Henry R. Reynolds and Josiah Reynolds, trading and doing business under the name and firm of H. R. and J. Reynolds, of the second part."

The *nar.*, after reciting the Resolution, the Articles of Agreement, etc., avers that, after the making and approval of said contract the said plaintiffs did actually enter upon the execution of said contract, and the performance of the work therein mentioned, and thenceforth continued in the execution of said contract, and performance of said work, until the defendant caused to be stopped and did stop the work on said jail and prevented said plaintiffs from the further execution of the same, as thereinafter set forth and pleaded. The appellees aver, that when they entered on the execution of said contract, they were ready and prepared to build in accordance with the plan of Thos. and J. W. Dixon, architects of the City of Baltimore, as mentioned in said contract, and were ready and prepared (in case the said T. P. Shannon should deem it necessary, and determined to make any or all of the improvements specified in said Resolution) and should so direct, to build said new jail comformably to the directions in that behalf of said Shannon, and the said Shannon, deeming it necessary, did determine to make certain of the improvements, and did direct the appellees to build the said new jail in conformity to the directions of said Shannon, which directions were observed, obeyed and followed by them, and the appellants caused the said work to be stopped.

The contract and its breaches as alleged, are put in issue by the first three pleas of the appellants; the other pleas

present issues, the consideration of which is not material in the disposition of the case. In this state of the pleadings, it was incumbent on the appellees to establish, *in limine,* the validity of the contract. For which purpose, they submitted the first of their series of prayers, by which it is declared that the paper dated the 11th of August 1856, purporting to be a contract between said appellees and said Shannon as City Commissioner, was a valid and binding contract, which being granted, constitutes the appellants' first ground of exception.

The appellants, being a public, municipal corporation or body politic, acting by a legally constituted officer, known as the City Commissioner, whose· powers in the premises were conferred by a special resolution, it is obvious that in deciding what was the contract, the Court must pass on all the questions involved in the construction of such contracts, made by public officers; and primarily, whether the paper declared to be a valid contract, was within the special authority conferred on theCommissioner.

The authority of the agent, the description of the building to be erected, the plan and specifications, the manner in which the contract should be made, the duty of the Commissioner in superintending the work, and *an injunction, to "cause the work to be done in strict conformity to the plan and specifications agreed upon,"* are to be found in the Resolution of the appellants of the 8th of July 1856, viz:

*Resolved, by the Mayor and City Council of Baltimore,* that the City Commissioner be and he is hereby authorised and directed to advertise immediately, in two or more of the daily newspapers of the City of Baltimore, for such period of time as he may judge necessary, for proposals for building a new jail on the site or lot on which the old jail now stands; said new jail to be built according to the plan and specifications submitted by Thomas and J. W. Dixon, to the committee on police and jail of the City Council of 1855, and now on file in the office of the City Register, with such alterations as may be necessary to enlarge the

cells, improve the ventilation, provide accommodations in said jail or contiguous thereto for the use of the Warden, in the event of the City Commissioner deeming such alterations or improvements advisable; and the said Commissioner is empowered and required with the consent of the Mayor, to contract in the manner and form contracts are usually made for the erection of buildings for the use of the City, with some one or more of the bidders for the building of said new jail; and it shall be the duty of said Commissioner to superintend the construction of the building, or employ a competent person for the purpose, and cause the work to be done in strict conformity to the plans and specifications agreed upon.

The express conditions of this power are:

1st. Proposals for building according to the plan and specifications on file with the City Commissioner, with such alterations as may be necessary, in the event the City Commissioner should deem such alterations advisable.

2nd. A contract, in the form usally made for the erection of buildings, for the use of the City, with some one or more of the bidders.

3rd. The construction of the work, in strict conformity to the plans and specifications agreed upon. In other words, the plan, specifications and price, of building the new jail, including the alterations, in the event of their being deemed necessary, were to be embodied in the contract, in the form usually made for the erection of buildings for the use of the City.

The direction to advertise for proposals, implies that the work was to be done upon a pre-arranged plan and at an ascertained rate of compensation. Such is the manner and form in which contracts are usually made for the erection of buildings for the use of the City. Strict conformity with the plans and specifications agreed upon, could not otherwise be enforced.

A power, to alter certain plans and specifications if deemed necessary, and contract for building "in conformity to

plan and specifications *agreed upon*," is very different from a power to contract with plan and specifications to be allowed thereafter, if deemed necessary, "*ad libitum.*"

The former, is a special limited power, certain and safe, the execution of which fixes a legal liability; the latter is indefinite, unlimited, beyond supervision or control. The nature of the trust committed to the Commissioner, and the source from which he derived his authority, stamped upon it the restraints of a special power, if the language of the Resolution did not clearly impose them. Acting for a community, all whose expenses must be defrayed by appropriations derived from taxation and rigidly accounted for; usage, public economy, fidelity of financial agents, as well as the specific appropriation of public funds, required express special contract, by plan and specification, previously agreed upon and approved, by which the sum total of the cost could be estimated and provided for. The Articles of Agreement recite that the appellees "have contracted with Joseph P. Shannon, City Commissioner, to erect a new jail within the enclosure in which the present jail is now located, for the sum of $102,750, said new jail to be built in compliance with a Resolution of the Mayor and City Council of Baltimore, approved July 8th, 1856, and agreeably to and in accordance with the plan and specifications submitted by Thomas and J. W. Dixon, architects of the City of Baltimore; said plan and specifications being selected by virtue of the Resolution referred to and now on file, in connection with all other papers relating thereto, in the office of the City Commissioner." Thus far, the Articles seem to be in strict compliance with the Resolution. They aver that the Commissioner and the appellees have contracted for a fixed sum, *and adopted the plan and specifications selected by the appellant's Resolution*. If this were true, the authority of the Commissioner as to the form of the contract and plan of the building, was *functus officio*, exhausted. Nothing remained for him but to see the contract executed "in conformity to the plan and specifications agreed on."

But, assuming his power to alter or change the contract, at any time thereafter, was unlimited, the Articles proceed thus : "It is hereby further understood and agreed, that in the event of J. P. Shannon, the party of the first part, deeming it advisable or necessary to make any or all the improvement specified in the Resolution referred to, H. R. and J. Reynolds, the party of the second part, shall be paid additional for the same. The character of the said alterations if made, and the amount to be paid for the same shall be determined by J. P. Shannon the party of the first part. And, in the event of the parties named being unable to agree as to what constitutes a just and fair and reasonable allowance for the additional work or improvements, should any be made, (or what amount shall be deducted from the sum specified in this contract,) the difference, if any, shall be submitted to arbitration, the decision of the arbitrators to be final and conclusive."

Instead of a contract, for work to be done, according to plan and specification agreed on, here is an agreement which authorises the parties to abandon the plan and specifications which they have just declared they had adopted, and execute the work according to future directions for a fair and reasonable allowance, to be ascertained by one of the parties thereto, or by arbitration. That is, the parties are to be remitted, to the remedies resorted to, where there is no express, but only an implied contract, a *quantum meruit* or *quantum valebat.* It is impossible to find in the Resolution, any warrant for these extraordinary clauses of the Articles.

The appellants never designed to commit the credit of the City to the custody of the City Commissioner to be pledged at his discretion, in the erection of any alterations or improvements, without plan, specification or price, previously ascertained and agreed on. They did not delegate to him the power to determine the amount to be paid for the work, except in the manner prescribed by the Resolution. Least of all have they authorised him, in case of

2    v. 20.

difference of opinion, to submit claims against them to an arbitrator, whose decision shall be final and conclusive. The common canons of construction, as well as the most obvious principles of law, force us to this conclusion, without attempting to draw the meaning of the parties to the contract from any extraneous sources.

"The most guiding principle in the construction of powers, is to be derived from a consideration of the purpose, which the agent or depositary of power is appointed to accomplish. Every express agency is special according to the legal signification of that word, and the only reasonable distinction is between express and implied."

The rule of the common law is, that no man can be bound by the act of another without or beyond his consent, and where an agent acts under a special or express authority, whether written or verbal, the party dealing with him is *bound to know at his peril*, what the power of the agent is, and to understand its legal effect, and if the agent exceed the boundary of his legal powers, the act, as concerns the principal, is void.    1 *Am. L. Ca.*, 544.    26 *Wend.*, 193, 122, and other cases there cited.

The Resolution of the 8th July 1856, was in this instance the special express written authority of the City Commissioner.    The contractors were advertised by its terms of the extent of his powers, his letter of attorney was before them; they were bound to know, at their peril, what his power was, and to understand its legal effect.

In a very recent case decided by this Court, the general principles governing the contracts of public agents were thus expressed : "The fact that the contract made, related to a subject within the general scope of his powers, does not make it obligatory on the appellants, if there was a want of specific power to make it.    Although a private agent acting in violation of specific instructions, yet within the scope of a general authority, may bind his principal, the rule as to the effect of a like act of a public agent, is otherwise. The City Commissioner was the public agent

of a municipal corporation, clothed with duties and powers specially defined and limited by ordinances bearing the character and force of public laws, ignorance of which can be presumed in favor of no one dealing with him on matters thus conditionally within his official discretion. For this reason the law makes a distinction between the effect of the acts of an officer of a corporation and those of an agent for a principal in common cases. In the latter, the extent of authority is necessarily known only to the principal and agent, while, in the former, it is a matter of record in the books of the corporation or of public law." 18 *Md. Rep.*, 282, 283, *Mayor & City Council of Balto., vs. Eschback.* "In cases of public agents, the Government or other public authority, is not bound unless it *manifestly appears*, that the agent is acting within the scope of his authority, or he is held out as having authority to do the act, or is employed in his capacity as a public agent to make the declaration or representation for the Government. Indeed this rule seems indispensable, in order to guard the public against losses and injuries arising from the fraud or mistake, or rashness and indiscretion of their agents." *Story on Agency*, sec. 307, *a.*

"It is better that an individual should now and then suffer by such mistakes, than to introduce a rule against an abuse of which, by improper collusions, it would be very difficult for the public to protect itself." *Lee vs. Munroe*, 7 *Cranch*, 370.

It is contended that the act of the Commissioner, if *ultra vires* in any particular, was recognised in various ways by the appellants as valid and binding, and especially by the Ordinance of the 31st December 1856, entitled "An Ordinance to provide for payments on account of the new jail, now being erected."

The plaintiffs (appellees) first prayer groups together the various modes of recognition and approval, as facts, which if found, authorised the Court to declare the paper dated the 11th of August 1856, was a valid and binding

contract. This mode of presenting the Articles of Agree-ment would seem to be a concession, that they were not valid and binding alone. The approval of the Mayor, or of the City Counsellor, or both together, could not cure the excess of authority assumed by the Commissioner, because they are but agents themselves, with limited special pow-ers, which do not extend beyond the subject matter defined. Although the consent of the Mayor is made one of the pre-requisites of the contract, yet it is but one of several condi-tions the others being more material, and the compliance with the lesser, does not dispense with the observance of the greater. The contract, as it is called, of the 11th August 1856, consisted as we have seen of two parts, the 1st reciting a strict compliance with the Resolution of the 8th July 1856, as to *price*, plan and specification;—the 2d containing provi-sions in our view, entirely beyond the Commissioner's au-thority. The Ordinance refers to the first part incidentally, by providing for the payment of the exact sum, which the appellees contracted to build the new jail for, and takes no notice of the other provisions of the contract.

The cases cited by the appellees to support the doctrine of recognition and ratification, are none of them cases of municipal corporations, created for public purposes, but those of private corporations aggregate, governed by boards of directors, representing stockholders, whose corporate capital is invested for their private advantage. Their rela-tion is very different from that of members of councils of a municipal body, organised for public purposes, elected by the people at stated periods, disbursing funds raised by annual assessments.

Even in the former class of cases it must be shown, that the corporation, through its proper officer, knew the terms of the contract and had full knowledge of all the circum-stances of the case. *Angel & Ames on Corprs.*, 304.

"Acts or acquiescence do not, as is sometimes carelessly said, ratify the unauthorised contract; but, in the more guarded and philosophical language of the better authori-

ties, they authorise judges and juries to presume consent or ratification. Certain conduct, according to the usual experience of human nature or of business, ordinarily accompanies or indicates consent or approval."

"Now that conduct, which in a merchant or other individual who is cognizant of his own affairs and able to interfere at any time in disavowing the abuse of his confidence, would indicate that he did not thus disavow his agent's conduct, is not significant in the same manner of the will of a sovereign government, which must act according to its constitution and laws, whilst the people can know the acts of its agents only through its representatives. It was well replied by the Attorney General to this part of the argument, that all the State officers together, including the Governor, the Auditor and the fund Commissioners, could not legally make such a contract as this; and therefore they could not ratify it directly, much less indirectly, by acts signifying acquiescence." *Delafield vs. The State of Illinois*, 26 *Wend.*, 192, *Verplank, Senator*. Keeping the distinction between private and public municipal corporations in view, the observations of Senator Verplank in the case cited, are eminently appropriate. The Mayor and City Council of Baltimore, could not officially know the condition of affairs until they were reported through their proper officers. They could not interfere in disavowing the acts of their agents until they were cognizant of the facts, and then they must act according to their charter and by-laws.

There is no evidence in this case of that full knowledge of the facts, on the part of the City Council, at the passage of the Ordinance of 31st December 1856, which these authorities seem to require, and the act of supposed ratification, instead of being independent and substantive, founded on complete information, was incidental and casual, before any evidence of the alterations in the plan adopted, had been officially brought to their knowledge. The only act of ratification referred to in the plaintiffs' first prayer, on the part of the City Councils, is the Ordinance of 31st

December 1856, at which time, it appears from the report of Shannon of the month of January succeeding, and the message of the Mayor of March 1857, offered in evidence by the plaintiffs, that the alterations had not been finally determined on. It is therefore impossible the City Councils could have designed to ratify that act which was prospective and contingent at the date of their ordinance. The maxim *"omnis ratihabitio retro trahitur et mandato priori æqui-paratur,"* is applicable to individuals and private corporations, because they act for their own interest an dadvantage, and their property or common capital is liable for their contracts.

But cities and other purely municipal corporations or bodies politic, which are allowed to assume some of the duties of the State, in a partial or detailed form, having neither property nor power for the purposes of personal aggrandizement can be considered in no other light than as auxiliaries of the government, and as secondary and deputy trustees, and servants of the people. *McKim vs. Odom,* 3 *Bland,* 417. *Ang. & Ames on Corps.,* 11.

Agents themselves, not principals, answerable to their constituents, they are not to be presumed to recognise and incidentally ratify and confirm the acts of their officers, done beyond the scope of their authority. Acts of ratification by such bodies politic should be direct, explicit, unequivocal, with full knowledge of the facts.

In the opinion of this Court, the first instruction or prayer submitted by the appellees and granted by the Court below, was erroneous in declaring that the paper dated the 11th August 1856, was a valid and binding contract between the appellants and appellees, the same being in fact and in law contrary to the provisions of the Resolution of the 8th July preceding, in pursuance of which it professed to be made and without sufficient evidence of ratification.

There being no evidence of a valid contract, the subsequent prayers based upon its assumed validity, must fall

with the first; hence it becomes unnecessary to examine and decide the collateral questions relating to the award, receipt, and other matters of testimony involved in them, raised by the other exceptions.

*Judgment reversed.*

(Decided May 5th, 1863.)