## City of Chicago v. Philip Malkan.

### Gen. No. 11,898.

1. DURESS—*what essential to recover payments made under.* The right in assumpsit to recover payments made under duress is unknown to the common law, and therefore, in order to justify a recovery upon such account, the plaintiff must show not only that the payment was made under legal compulsion, but also that it is against equity and good conscience for the defendant to retain the money.

2. LICENSE—*two saloons cannot be run under one.* Two saloons cannot be run under a single license notwithstanding they are both located in the same premises.

3. LICENSE—*how right of conducting saloon business under, construed.* A person running a saloon business under a license is exercising a privilege, not a right, and such privilege is strictly construed.

4. PUBLIC OFFICIAL—*when cannot bind city.* A public official of a city, not the legal officer thereof, cannot bind it by any legal opinion which he may give with respect to a supposed property right.

Action of assumpsit. Appeal from the Circuit Court of Cook County; the Hon. FREDERICK A. SMITH, Judge, presiding. Heard in this court at the October term, 1904. Reversed. Opinion filed April 10, 1905.

MACLAY HOYNE, Assistant Corporation Counsel, for appellant; EDGAR BRONSON TOLMAN Corporation Counsel, of counsel.

COX, HELDMAN & EVERETT, for appellee.

City of Chicago v. Malkan.

MR. PRESIDING JUSTICE BALL delivered the opinion of the court.

In February, 1897, appellee rented the two-story and basement building known as No. 178 Quincy street in the city of Chicago. Within a month thereafter he placed a complete saloon outfit in the basement, put two men in charge of it and thereafter ran it as a saloon and restaurant. The entrance to the basement was by a separate outside stairway leading down from the street. He also installed upon the first floor an elaborate saloon equipment and there sold all kinds of liquors. March 16, 1897, he took out a city license authorizing him to keep a saloon at that number. Some time between the last date and the month of October, 1897, he connected the first floor and basement by an inside stairway. He ran these two saloons under this one license until October 8, 1897, when the city collector, Joseph S. Martin, threatened to close up both saloons unless appellee at once paid the sum of $219.95 as a license fee for the basement saloon from May 1, 1897, to the date last named. Thereupon appellee paid that sum under protest, and shortly thereafter closed up the basement saloon.

This action was brought against the city and the city collector, Mr. Martin, to recover the money thus paid, and for damages arising out of the loss of money expended in the fitting up of the basement saloon, and for the decrease in the value of his lease by reason of the closing of such saloon.

During the trial and at the close of the plaintiff's (appellee's) case, the trial judge instructed the jury to find the issues for the defendant Martin, which was accordingly done. At the close of all the evidence the trial judge instructed the jury to find the issues for the plaintiff and to assess his damages at the sum of $287.70, which is the sum thus paid, and interest thereon; to which action appellant duly excepted. From the judgment entered on that verdict this appeal was perfected.

The contention of appellant is that appellee had no right to run two saloons under one license. That of appellee is

that he had the right under one license to operate as many bars (saloons) as he ·pleased in the premises known as No. 178 Quincy street, and that as the demand of appellant for the payment of two licenses was illegal and as the money paid by him for the second license was paid under duress, it may be recovered in an action of assumpsit.

The right to recover payments made under duress in assumpsit is unknown to the common law, and therefore in order to justify a recovery appellee must show, not only that such payment was made under legal compulsion, but also that it is against equity and good conscience for appellant to retain the money. Watson v. Woolverton, 41 Ill. 243.

It is clear from the evidence that appellee was running two saloons in this building. Each was complete in itself in equipment and in service. They were not connected in any way until in the summer or fall of 1897, when appellee put in an inside stairway. Appellee refers to them as two saloons. He says: "I opened both the basement saloon and the street floor saloon at the same time and continued to operate them until October, 1897." * * * "My saloon on the first floor of 178 Quincy street and the saloon in the basement both had entrances on Quincy street." Appellee further says that when he fitted up these two saloons he forgot to connect them by an inside stairway. When he put that stairway in he does not say. George Hoffman, a witness called by appellee, testifies that such stairway was built after February, 1897, and before October, 1897, "along in the summer time." It thus appears that for the time, or for the greater part of the time for which the city demanded payment, appellee was running two unconnected and complete saloons under one license, in violation of the statute and of the ordinance. Hence it is not inequitable nor against good conscience for the city to retain this money, even if it was obtained by legal duress.

Appellee contends that he had the legal right to run two bars under one license so long as they were on the premises

City of Chicago v. Malkan.

mentioned in the license, and he was the sole owner and manager thereof. He cites cases from other states which support this contention. Notable among these is St. Louis v. Gerardi, 90 Mo. 640, in which under one license the managers of the Planters Hotel were held authorized to run three complete saloons, each of which opened upon a different street, and were connected with each other in no other way than this, that each saloon had a doorway opening into the main office of the hotel. In the decision of this case we must be guided by our statute and· by the ordinances of the city relating to the selling of liquor.

By chapter 43, R. S., Hurd 1903, a dram-shop is defined as "a place where spirituous or vinous or malt liquors are retailed by less quantity than one gallon." The statute provides a penalty for selling without a license and states how and by whom the license may be granted. The license shall state the time for which it is issued; "the place where the dram-shop is to be kept, and shall not be transferable, nor shall the person licensed keep a dram-shop at more than one place at the same time."

Section 1175 of the City Ordinances provides that the licensee shall "keep closed on Sundays all doors opening out upon any street from the bar or room where such dram-shop shall be kept, and that all windows opening upon any street from such bar or room shall on Sundays be provided with blinds, shutters or curtains so as to obstruct the view from such street into such room." Section 1177 provides that the license granted shall "authorize the person or persons therein named to keep a dram-shop." Section 1181 directs that the licensee shall cause to be and remain posted upon some conspicuous part of the room or bar kept or used for such purpose his or their license. Section 1185 forbids the keeping open of "any saloon, bar room or tippling house during the night time," etc. The license issued to appellee was "to keep a saloon or grocery at 178 Quincy street in the city of Chicago." We find nothing in the statute or in the ordinance which permits, directly or by implication, the seller of liquors to run more than one

saloon under a single license. Appellee was engaged in a business regulated by both the statute and the ordinance (Schwuchow v. Chicago, 68 Ill. 444)—a business he could not legally carry on except under and by virtue of a license. In running these saloons he was exercising a privilege and not a right. Such a privilege will be strictly construed. Richie v. Zalesky, 98 Iowa 592. It is not the law of this state that under one license the licensee can run as many saloons as he has rooms in his building, provided such rooms connect with each other by doors, openings or stairways.

The court excluded evidence offered by appellee to prove that at the time he was about to rent these premises the city collector told him that one license would cover a saloon in both street floor and basement if they were connected by an inside stairway and were under one ownership and management. This ruling is correct. That officer could not bind or estop the city by the utterance of any legal opinion he might entertain. He is a public agent clothed with specially defined powers, the extent of which appellee was bound to know because such powers are conferred and limited by statutes and ordinances. Among these powers is not that of declaring what the law is upon a given statement of facts. Mayor v. Reynolds, 20 Md. 1; Rissing v. Fort Wayne, 137 Ind. 427; Cleveland v. State Bank, 16 Ohio St. 236; Miller v. Mayor, 3 Hun. 35.

The judgment of the Circuit Court is reversed.

*Reversed.*