# THE MAYOR AND COUNCIL OF SALISBURY

*vs.*

## THE CAMDEN SEWER COMPANY.

*Municipal Ordinance—Construction—Averment of Negligence.*

The rule that if the language of a statute is plain and unambiguous, there is no room for construction, applies to city ordinances as well.                                              p. 260

In an action against a city by a sewer company, an allegation that defendant "so negligently and carelessly maintained" certain catch basins, and "so negligently and carelessly permitted surface water to be drained into" plaintiff's sewer, "as to cause said sewer to be filled up with debris," sufficiently alleged defendant's negligence, it not being necessary to allege the facts which proved the negligence.                          pp. 261-263

Since plaintiff claimed, in each count of the declaration, substantial damages for injury to its sewer by defendant's course in turning surface water and debris therein, and in neither count sought to recover for defendant's mere entry into the sewer, and there was no prayer directing a verdict for plaintiff if defendant "entered" the sewer, a granted prayer that, if the jury found for plaintiff, they should allow him the reasonable cost of repairing the sewer, was not misleading on the ground that the jury might find that defendant entered the sewer without authority, but that the damage thereto was caused by plaintiff's own negligence.                                    p. 264

Where the evidence produced by the plaintiff is sufficient to fasten responsibility for the injury upon the defendant, any conflict between it and the evidence produced by the defendant is a matter for the jury.                                       p. 265

In an action against a city for injury to plaintiff's sewer by the draining of surface water through catch basins into the sewer, in such a manner as to clog the sewer, *held* that it was proper to admit in evidence a piece of bark and a piece of board which passed into the sewer through one of the catch basins.                                                   p. 266

It was proper to refuse to permit a witness, who found some roots in the sewer, to say how long it would take such a growth to collect in the sewer, there being no evidence that the witness was qualified to answer.　　　　　　　　　　　p. 266

It was proper to exclude a question asked of a witness, as to what was necessary to keep a sewer in the highest state of efficiency, when this was not a material inquiry in the case.

p. 266

*Decided June 21st, 1922.*

Appeal from the Circuit Court for Worcester County (BAILEY and DUER, JJ.).

Action by the Camden Sewer Company against the Mayor and Council of Salisbury, to recover for damage to plaintiff's sewer. From a judgment for plaintiff, defendant appeals. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, URNER, STOCKBRIDGE, and OFFUTT, JJ.

*Levin C. Bailey,* for the appellant.

*George H. Myers,* with whom were *Miles & Myers* on the brief, for the appellee.

THOMAS, J., delivered the opinion of the Court.

In 1902 the Mayor and Council of Salisbury, Maryland, a municipal corporation, passed an ordinance authorizing William J. Staton and others to construct and maintain certain sewers in its streets. The ordinance recites that William J. Staton, L. E. Williams, N. T. Fitch, A. A. Gillis and others were desirous of laying a sewer pipe on Camden Avenue, and such other streets and boulevards intersecting or crossing said avenue as they might find advantageous, for the purpose of affording proper and adequate drainage from their properties, and the properties of persons to whom they should sell the right to make connections with such sewers, and then provides:

"Now, in view of the incidental advantages to pub-
lic health and comfort which will be contributed by
said sewers, and the further advantages of having
them constructed and maintained by private enter-
prise, be it enacted by the Mayor and Council of
Salisbury, Wicomico County, Maryland, that the said
William J. Staton" and others called, "for the pur-
pose of convenience," the "Camden Sewer Company,
are hereby granted leave and permission to lay a
main sewer pipe on Camden Avenue, from the south
end thereof to the Wicomico River, with pipe of not
less than twelve inches in diameter, and with the
right to lay subsidiary pipes of not less than eight
inches in diameter, on any or either of the streets or
boulevards crossing or intersecting, or convenient to
said main sewer, that the said company may deem
advantageous to do, and to discharge from said sub-
sidiary pipes into said main pipe."

"Section 2.   And be it enacted, That the said Cam-
den Sewer Company may impose and charge such
fee (not over $75.00) as it shall deem best, for the
connection by any owner or tenant of any residence
or other building, with either of the sewers so to be
constructed by it; and shall not refuse to permit such
connection to be made by any such owner or tenant
who shall with his application for leave to make such
connection, pay or offer to pay to the treasurer of said
company the fee therefor as aforesaid; provided
always that the sewer pipe with which connection is
desired to be made is not already taxed to its full
capacity."

Section 4 contains the following provisions:

"In consideration of the permission hereby and
herein granted be it further enacted, and it is hereby
expressly understood and agreed, That the Mayor and
Council shall have the privilege of draining surface
water on Camden Avenue in said main sewer from the
corners formed by any intersecting street, free of
charge; provided, and so long as, the admission of
such surface water shall not and does not interfere

with the primary purpose for which said sewer is laid by the company, or prevent its efficiency in that regard, or prove detrimental to its permanency; and if the said company and the Mayor and Council should at any time disagree on any matter relating to the admission of said surface water into said sewer, then the matter shall be submitted to three disinterested persons, of whom the company shall choose one, Mayor and Council another, and the two persons so chosen shall select a third (who preferably shall be an expert on sewerage drainage), and the decision of the three shall be final.

"It is further understood and agreed that the Mayor and Council shall have the option and right at any time of buying from the said parties (herein called the Camden Sewer Company), their heirs, legal representatives, and assigns, all their interest in the said pipes put down by them under the authority of this ordinance upon paying the cost thereof, and of the laying of the same, with interest to the time of such purchase, and thereupon to take and assume absolute control and ownership thereof."

In 1904 the Camden Sewer Company was incorporated, and it is agreed in this case that said corporation thereafter became entitled to, and at the time of the trial of this case "lawfully" held and exercised "all the rights, privileges and franchise" granted by said ordinance. This suit, which was brought in 1920 by the sewer company against the Mayor and Council of Salisbury in the Circuit Court for Wicomico County, was removed to the Circuit Court for Worcester County, where the trial resulted in a judgment in favor of the plaintiff for $333.59, and this appeal by the defendant brings up for review rulings of the court below on a demurrer to the declaration, a demurrer to the third plea to the first count of the declaration, and on the evidence and prayers.

The declaration contains two counts. The first count, after alleging that the defendant was a municipal corpora-

tion, the passage of the ordinance to which we have referred, the incorporation of the plaintiff in 1904, the assignment to it of the rights and franchise granted by said ordinance, and that the plaintiff still held and exercised said rights and franchise, then alleges that in the exercise of said franchise "the plaintiff during or about the year nineteen hundred and four began to construct a main sewer running from a point on Camden Avenue where the same intersects the southern limits of the said town of Salisbury along said Camden Avenue in a northerly direction to the Wicomico River, said sewer pipe being not less than twelve inches in diameter; and that from time to time thereafter the said plaintiff in the exercise of its franchise aforesaid laid and constructed sewer pipes not less than eight inches in diameter along and under other streets intersecting and crossing Camden Avenue and lying to the eastward thereof, among which said cross streets is a certain Newton Street; that said ordinance passed by the Mayor and Council of Salisbury * * * contains among other provisions the following conditions": The declaration then sets out the first paragraph of section 4 of the ordinance, and further alleges "that the primary purpose for which the plaintiff was incorporated and the said sewers constructed by" it "was and is to carry sewage from residences along said Camden Avenue and the streets intersecting" it "into the Wicomico River, for which said service the plaintiff is entitled to charge and receive a fee of seventy-five dollars, for each entry into its said sewer from said residences, and it becomes thereupon the duty of the plaintiff to maintain said sewer system so as to properly serve its said patrons * * *; that the said defendant instead of entering said main sewer on Camden Avenue aforesaid at the intersection of said Camden Avenue with said cross streets, as provided by said ordinance, has from time to time, since the construction of said sewers along and under said cross streets, constructed certain catch basins at divers points on said cross streets, and especially on said Newton Street, through which said catch

basins the said defendant for more than three years last past and up to the present time has wrongfully and without the consent and permission of the plaintiff drained and continues to drain the surface water from said cross streets and other streets of the said town of Salisbury into the several sewers laid by the plaintiff as aforesaid along and under said cross streets, causing a portion of said sewer under said Newton Street, to wit: the eastern end thereof, to become filled up with sticks, chunks, earth, and other debris washed into it from said streets, whereby said portion of said sewer on said Newton Street became completely filled up and closed on or about the 20th day of May, nineteen hundred and twenty, so as to render it incapable of carrying sewage from the residences of plaintiff's said patrons entering said sewer on said portion of said street, thereby compelling the plaintiff to take up and remove said portion of said sewer, and to clean out and relay the same, at great cost and expense to the plaintiff whereby the plaintiff suffered great loss, damage and injury."

The second count, after making substantially the same averments, without setting out the section of the ordinance quoted in the first count, then charges "that for a number of years last past and especially for three years last past, the said defendant has so negligently and carelessly maintained said catch basins, which enter into the east end of said Newton Street sewer, and has so negligently and carelessly permitted said surface water to be drained into the eastern portion of plaintiff's said sewer on said Newton Street, as to cause said part of said sewer to become filled up with said debris, and to cause said portion of said sewer along and under said Newton Street, to wit: the east end thereof, to become closed completely on or about the 20th day of May, nineteen hundred and twenty, so as to render it incapable of carrying sewage from the residences of the plaintiff's said patrons entering said sewer on said street, and thereby compelling the plaintiff to take up and remove said portion of said sewer

and to clean out and relay the same at great cost and expense to the plaintiff, by reason of which the plaintiff suffered great loss, damage and injury."

The ground of the demurrer to the first count is that, under the proper construction of the ordinance granting the franchise, the Mayor and Council was authorized to turn the surface water on the intersecting streets into the sewers constructed on such streets, and counsel for the appellant cites a number of cases in support of his contention that "if the language of an ordinance is reasonably open to two constructions, that one will be adopted which is favorable to the city. Any doubt must be resolved in favor of the public." Assuming that these cases go to the extent claimed, and that they are applicable to ordinances of the character of the one under consideration, which may become contracts between the city and the party accepting and acting upon them (*Westminster Water Co.* v. *Westminster,* 98 Md. 551), it is obvious that they cannot apply to this particular ordinance. In *Gill* v. *Oacy,* 49 Md. 243, the Court said: "In construing statutes the intention of the Legislature is to be carried out, and that intention is to be collected from the words of the statute, by considering every part of it, as well as the cause or necessity for making the Act, or from foreign circumstances," and in the case of *Smith* v. *State,* 66 Md. 215, the Court said that "the doctrine in all the states seems to be well established, and it is now uniformly held, that if the language of a statute is plain and unambiguous there is no room for construction, there being nothing to construe." The same general rules apply to ordinances. *State* v. *Kirkley,* 29 Md. 103; 28 *Cyc.* 388; *People* v. *Deehan,* 153 N. Y. 528. Turning to the ordinance, we find the intention of the Mayor and Council clearly expressed in language plain and unambiguous. That language is: "It is hereby expressly understood and agreed, that the Mayor and Council shall have the privilege of draining surface water in Camden Avenue in said main sewer from the corners formed by any intersecting street, free of charge."

The right and privilege thus reserved to the city was not the right to drain surface water on the intersecting streets into the sewers *on those streets,* but to drain surface water on Camden Avenue into the *"main"* sewer from the corners formed by the intersecting streets. The ordinance also provided that the main sewer on Camden Avenue should be not less than twelve inches in diameter, while those on the intersecting streets were to be not less than eight inches in diameter, and it may well be that this difference in the size of the sewers accounts for the restriction of the right reserved to the city to the *main sewer* on Camden Avenue. It is suggested in the brief of the appellant "that Newton Street and Vine Street drain towards Camden Avenue, and as a consequence no larger amount of surface water goes into the Camden Avenue sewer by reason of the catch basins complained of than would go into it if it were allowed to run on the surface of Newton Street until it reaches the intersection of Newton Street with Camden Avenue, and was then carried into the Camden Avenue sewer." It does not follow, however, because the Camden Avenue sewer was not required to carry any more surface water under the conditions complained of than it would have carried if the catch basins had been located on Camden Avenue, that there was not more danger of surface water, with its accompanying debris, choking an eight inch sewer than a twelve inch sewer. But whatever may have been the real reason for confining the privilege of the city to the main sewer on Camden Avenue, the terms of the ordinance are free from ambiguity, and clearly mark the limits of the rights reserved. The demurrer to the first count of the declaration was therefore properly overruled, and as the same question was raised by the defendant's third plea to the first count, the demurrer to that plea was properly sustained.

The ground of the demurrer to the second count is that it contains "the bare allegation that the catch basins had been negligently and carelessly maintained, without stating in what

manner, or by reason of what acts of commission or omission on the part of the defendant the injury resulted." The appellant relies upon the cases of *Hanrahan* v. *Baltimore City,* 114 Md. 517, and *Offutt* v. *Montgomery County,* 94 Md. 115. In *Hanrahan's case,* the first count in the declaration merely alleged that the defendants so located, dug, and constructed the sewer adjoining plaintiff's property that the earth supporting the walls of her house and the foundation "settled and sank," and her house was thereby injured. There was no averment of any negligent act on the part of the defendants, nor of any actual invasion of the plaintiff's property, and JUDGE PEARCE said: "In such a case it is well settled in Maryland there can be no recovery under such a count," and quoted from *Offutt's case, supra,* where it was said: "It was not charged that the work was improperly or carelessly done, and inasmuch as the appellees had the power to authorize the railway company to construct its tracks upon the bed of the street and to change the grade, and that the land of the appellant was not actually invaded, it follows that under the allegations of this count of the *narr.,* the appellant is not entitled to compensation for the injuries alleged to have resulted from the change of grade." In the case at bar, the *narr.* does allege that the defendant "negligently and carelessly maintained said catch basins," and "so negligently and carelessly permitted the surface water to be drained into the sewer on Newton Street as to cause the sewer to be filled up with debris," &c. In the case of *Philadelphia, B. & W. R. Co.* v. *Allen,* 102 Md. 110, the Court held that a *narr.* that alleged that the company "so negligently and unskilfully conducted itself in carrying the plaintiff and in managing the said railroad and the car and the train on which the plaintiff was a passenger" that the plaintiff "was thereby thrown down and wounded and injured" was sufficient, CHIEF JUDGE MC-SHERRY saying: "The dry allegation of fact is that the company negligently *managed* its railroad and train and car; but the evidentiary facts proving or tending to prove that

negligence are not set forth, and there was no occasion to aver them. The asserted negligence and not the facts which prove the negligence constituted the cause of action." The averment that the defendant "negligently and carelessly maintained" the catch basins, &c., would seem to be equally as definite as the allegation that a railroad company negligently "managed" its railroad, &c., and the count is not open to the objection urged in support of the demurrer. See also sub-sections 32, 33, 36 and 37 of section 24, article 75 of the Code.

The evidence shows that the defendant constructed two catch basins on Newton Street, one at the intersection of Smith Street and the other at the intersection of Locust Street. These basins were about one foot nine inches wide, about two and a half feet long and three or four feet deep, and were built of brick with cement bottoms, and covered by a cast iron grate, between the bars of which there was a space of one and one-half inches. The basins were connected with the sewer by an eight inch pipe, located about two feet above the bottom of the basin, and the witness who constructed them testified that the bottoms of the basins were made lower than the pipe leading to the sewer in order to catch the "mud, leaves and trash" that wash through the grate. The plaintiff also offered evidence tending to show that in May, 1920, the sewer pipe on Newton Street became so choked or clogged that the sewage from the houses connected with it would not flow or pass through the sewer; that in consequence thereof the sewer had to be opened, and about one hundred and twenty feet of the sewer pipe had to be taken up and replaced at a cost to the plaintiff of $333.59; and that the choking and clogging of said sewer was caused by mud, leaves, sticks, and pieces of bark and boards that had passed through the grate on the catch basins on Newton Street and through the pipe connecting the basins with the sewer into the sewer pipe. On the other hand, the defendant offered evidence for the purpose of showing that the closing of the

Newton Street sewer at the time mentioned was due to roots that had clogged the mouth of the sewer on Camden Avenue.

With the amended declaration the plaintiff filed as a bill of particulars the itemized and receipted bill of the plumber for repairing the sewer, amounting to $333.59, which was shown to be correct and reasonable, and, at the conclusion of the testimony, the court below granted the only prayer offered ·by the plaintiff, which instructed the jury that if they found for the plaintiff, "in assessing damages they should allow the plaintiff the reasonable cost of repairing the damage to the portion of the plaintiff's said Newton Street sewer mentioned in the declaration." The only objection made to this prayer is that there were two theories of the plaintiff's case, and that the jury might have found that the city entered the plaintiff's sewer without authority, but that the damage to the sewer was caused by the plaintiff's own negligence and not by the negligence of the defendant, in which event the plaintiff would have been entitled to nominal damages only. In neither count of the declaration, however, did the plaintiff seek to recover for the mere entry into the sewer, but in both counts it claimed substantial damages for the injury caused by turning the surface water and debris on Newton Street through the catch basins mentioned into its sewer, and there was no prayer directing a verdict for the plaintiff if the jury found that the defendant "entered" the sewer. That the defendant constructed the catch basins in question and connected them with the sewer was not disputed, nor was the amount of the damages the plaintiff sustained questioned, and the only questions the jury determined were whether the catch basins were constructed with the consent of the plaintiff, and whether the clogging of the sewer was caused by the defendant's negligence or was due in whole or in part to the negligence of the plaintiff. The verdict of the jury was for the amount the plaintiff paid for replacing the sewer, and they could not, under the circumstances, have been misled by the prayer.

The defendant's first prayer, which was rejected by the court below, sought to withdraw the case from the jury, and in support of it the appellant insists that, notwithstanding the evidence produced by the plaintiff tended to show that the clogging of the sewer was caused by the debris that entered it through the catch basins, the evidence produced by the defendant "clearly shows" that the stoppage was primarily caused by the growth of roots which the plaintiff had allowed to collect in the sewer, and that the case, therefore, comes within the ruling in *Harford County* v. *Wise,* 75 Md. 38, where the Court held, quoting from the syllabus: "Where the evidence of the plaintiff is evenly balanced as to whether the cause for which the defendant is responsible, and the cause for which he is not responsible, produced the injury, the jury would have no right to disregard arbitrarily the proof which exculpated and credit only that which inculpated him." The manifest answer to this contention of the appellant is that the principle invoked can only apply where such evidence as the Court referred to is the evidence of the *plaintiff,* upon whom is cast the burden of showing that the defendant is responsible for the injury complained of. Where the evidence produced by the plaintiff is sufficient to fasten responsibility for the injury upon the defendant, any conflict between it and the evidence produced by the defendant is a matter for the jury, and it is for the jury to say which they will accept.

The defendant's second prayer asked the court below to instruct the jury that if they found from the evidence that the catch basins on Newton Street were constructed and connected with the sewer "by the direction" and with the permission of the plaintiff, and that the defendant had used ordinary care in constructing and maintaining the same, their verdict should be for the defendant, and was properly rejected because there was no evidence to show that the basins were constructed "by the direction" of the plaintiff. The

exception to the modifications of defendant's third and fourth prayers was abandoned in this Court.

We have carefully examined the eight exceptions to the rulings of the court on the evidence. The first was to the admission in evidence of a piece of bark taken out of the end of the Newton Street sewer on Camden Avenue, and was objected to on the ground that the part of the sewer alleged to have been clogged was towards the other end of the sewer. The mouth of the sewer was at Camden Avenue, and the piece of bark could only have gotten into the sewer through one of the catch basins above, and there was also evidence tending to show that when a sewer is choked at any point the sewage is forced back and tends to clog the sewer at the upper end. The second exception was to the admission in evidence of a piece of board which the witness stated had passed through the grate of the catch basin at the corner of Smith and Newton Streets, and was taken from the pipe connecting the basin with the sewer at the time of the injury complained of. The third and fourth exceptions were to the refusal of the court to permit a witness, who found some roots in the sewer more than a year after the injury complained of, to say how long it would "take a growth of that kind to collect in the sewer," or to state how often a sewer should "be subjected to a thorough flushing and cleaning in order to keep it in the highest state of efficiency." There was no evidence to show that the witness was qualified to answer the first question (*Rittenhouse, W. Auto. Co. v. Kissner,* 129 Md. 102), and what is necessary to keep a sewer in "the highest state of efficiency" was not a material inquiry in this vase. The evidence objected to in the fifth, sixth, seventh and eighth exceptions was clearly admissible in rebuttal of defendant's evidence.

Finding no error in any of the rulings of the court below, the judgment will be affirmed.

*Judgment affirmed, with costs.*