## CAMDEN SEWER COMPANY *v.* MAYOR AND COUNCIL OF SALISBURY.
[No. 5, April Term, 1936.]

*Decided May 18th, 1936.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, and SHEHAN, JJ.

*George H. Myers,* for the appellant.

*A. Everett Williams* and *Curtis W. Long,* with whom were *Miles, Bailey & Williams* and *Johnson & Johnson* on the brief, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

On June 7th, 1902, the Mayor and Council of Salisbury, Maryland, by an ordinance of that date granted to William J. Staton and others, associated under the name of Camden Sewer Company, a right or franchise to lay sewer mains in Camden Avenue, and certain named lateral streets intersecting Camden Avenue, in Salisbury. Section 4 of that ordinance provided, in part, that: "In consideration of the permission hereby and herein granted, be it further enacted, and it is hereby understood and agreed, that the Mayor and Council shall have the privilege of draining surface water on Camden Avenue into said main sewer from the corners formed by any intersecting street, free of charge, provided, and so long as, the admission of such surface water shall not, and does not, interfere with the primary purpose for which said sewer is laid by said Company, or prevent its efficiency in that regard, or prove detrimental to its permanency; and if the said Company and the said Mayor and Council should at any time disagree on any matter relating to the said admission of said surface water into the said sewer, then, the matter shall be submitted to

three disinterested persons, of whom the Company shall choose one, the Mayor and Council another, and the two persons so chosen shall select a third (who preferably shall be an expert on sewerage draining) ; and the decision of the three shall be final."

One of the lateral streets intersecting Camden Avenue in Salisbury is Newton Street.

By chapter 12 of the Acts of 1904, Staton and others were made a body corporate under the name of Camden Sewer Company, which was empowered to carry out the purposes of that ordinance, and although so far as the record shows there was no grant from the unincorporated association or its members to the corporation, the corporation nevertheless constructed and from that time on operated the sewerage system, and apparently exercised the rights and powers granted by the ordinance to the unincorporated association.

Camden Avenue runs apparently north and south, Newton Street east and west. A sewer, running east from Camden Avenue, 1,450 feet on Newton Street, was constructed and connected with the main sewer on Camden Avenue. To facilitate the collection of storm and surface water on Newton Street, certain catch basins were constructed along that street, apparently at the direction of some official of the Town of Salisbury, and connected with appellant's sewer pipe on Newton Street. The effect of that arrangement was to gather the surface water flowing along Newton Street and discharge it into that part of the sewer which was laid along Newton Street before it joined the main sewer at Camden Avenue. In 1920 a part of the Newton Street sewer was found to be clogged and choked with debris collected by the surface water flowing along that street and discharged into the sewer through the catch basins. The Camden Sewer Company demanded that the Mayor and Council of Salisbury reimburse it for the expense of removing the obstruction, and upon its refusal brought an action against it to recover the cost of repairing the damage caused by the appellant's acts in gathering and discharging surface and

storm waters into its sewer on Newton Street, first on the theory that the town had no right to discharge such water into the sewer on Newton Street at all; and, second, that if it had any such right it failed to exercise reasonable care in exercising it, and that the damage to the sewer was the direct consequence of such negligence. It recovered a judgment in that case, which was affirmed on appeal to this court. *(Salisbury v. Camden Sewer Co.,* 141 Md. 254, 118 A. 662), and in that case, in dealing with the identical ordinance under consideration here, it was held that, under section 4 of the ordinance, while the town had the right to discharge storm and surface water into the sewer on Camden Avenue, it had no right to discharge such waters into the sewer on Newton Street before it reached Camden Avenue, and that it was liable either on the theory of negligence in the construction and operation of the catch basins, or on the theory that it had unlawfully invaded the property of the Camden Sewer Company.

Following that suit, on October 27th, 1924, the Camden Sewer Company brought this action against the Mayor and Council of Salisbury to recover the expense of removing obstructions which were said to have been carried into the Newton Street main by surface and storm water discharged into it through the same or similar catch basins, although it is not clear whether those obstructions were in the part of the main involved in the former suit, or whether they had been deposited after the institution of that suit.

A bill of particulars showing the items of expense incurred in cleaning out the sewer was filed by the appellant in October, 1925, and in September, 1935, some ten years later, the case was, on the suggestion of the appellant, removed to the Circuit Court for Worcester County for trial. No pleas were filed, and the case was tried in that court on the declaration and the bill of particulars. The trial resulted in a verdict for the plaintiff for $100, a motion for a new trial was overruled, and

judgment entered for that amount. This appeal is from that judgment.

The only exception found in the record relates to the refusal of the following prayer offered by the plaintiff: "The jury are instructed that under the franchise ordinance offered in evidence the defendant had no right to drain surface water into plaintiff's sewer on Newton Street, and if the jury find from the evidence that the defendant did construct catch basins and run surface water into said Newton Street sewer and shall further find that the entry of said surface water damaged said sewer, then the plaintiff is entitled to recover in this case the reasonable cost of repairing said damage and the jury may allow interest on such cost in their discretion."

That prayer did two things: First, it enumerated the facts which the plaintiff was bound to prove to establish the defendant's liability; second, if those facts were found, and liability established, it announced the measure of the damages which the plaintiff was entitled to recover. It also stated by way of premise that the defendant had no "right to drain surface water" into plaintiff's sewer on Newton Street. That premise is in precise accord with what was decided in *Salisbury v. Camden Sewer Co., supra.*

If, therefore, the appellee had no "right" to discharge surface water into the sewer on Newton Street, and it did nevertheless discharge it into that sewer, it acted wrongfully, and if its wrongful acts damaged the plaintiff's property, to wit, the sewer, it became liable to plaintiff for such damage. The prayer stated that proposition and nothing more. It predicated liability upon a finding that appellee did discharge surface water into plaintiff's sewer "on Newton Street" and that the discharge of such water did damage the sewer, and it limited the liability of the defendant to the "reasonable cost" of repairing "said damage." Inasmuch as the defendant had no right to discharge surface water into the Newton Street sewer at all (*Salisbury v. Camden Sewer Co.,* 141

Md. 254, 118 A. 662; *Camden Sewer Co. v. Salisbury*, 162 Md. 454, 462, 160 A. 4), no question of negligence in the construction or maintenance of the devices employed to divert the surface water into the Newton Street sewer was involved. The plaintiff, in the second count of its declaration, counted on negligence; but it had the right to stand on the theory set out in the first count of the declaration, that the diversion of the surface water into its sewer on Newton Street was a wrongful invasion of its property. Its prayer submitted that theory and it should have been granted.

Since the plaintiff did recover a judgment, it is obvious that it was not injured by the refusal of the prayer in so far as it affected its right to recover at all. But it is also apparent that in so far as it related to the measure of damages it may well have been injured by the refusal of the prayer. The amount of damages which the jury assessed had no apparent relation to any evidence in the case, and while ordinarily that variance would be a question for the trial court on a motion for a new trial, nevertheless it is not wholly immaterial in determining whether the plaintiff was injured by the refusal of a prayer submitting a correct measure of damages. In this case the discrepancy between the damages proved and the verdict of the jury was so glaring as to indicate that the jury was embarrassed by the absence of proper instruction on that question. Since the plaintiff's prayer properly stated the measure of damages applicable to the facts of the case (63 *C. J.* 1039), and since the jury were not otherwise instructed as to the damages recoverable, it cannot be said that the plaintiff was not injured by the refusal of its prayer.

It follows that the judgment must be reversed and the case remanded for a new trial.

*Judgment reversed, and case remanded for*
*a new trial, with costs to appellant.*