TRUE *v.* MAYOR AND COMMISSIONERS OF WESTERNPORT

[No. 17, October Term, 1950.]

282 

*Decided November 3, 1950.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, HENDERSON, and MARKELL, JJ.

*Thomas Lohr Richards* and *H. G. Shores* for the appellant.

*Horace P. Whitworth,* with whom was *Horace P. Whitworth, Jr.,* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from the granting of a judgment *non obstante veredicto* in favor of The Mayor and Commissioners of Westernport, a municipal corporation, appellee, which set aside a verdict in favor of the appellant, Minnie A. True, rendered by a jury in the Circuit Court for Allegany County. This suit in tort is against the town of Westernport for negligence in failing to maintain or relocate a sewer which broke during a heavy rainfall and flooded appellant's home.

Westernport is laid out so that water from the mountains on both the eastern and western part of the town runs down steep mountain grades to George's Creek, which flows from north to south through that town. The sewer in this case carries surface water from the top of the mountain, possibly a half mile above the intake, through a thickly built up section of the town and across and under five cross streets approximately 250 feet apart. It is fourteen hundred feet in length and has a fairly uniform grade from the intake to a point on Front Street immediately in front of appellant's home which is located on that street. After the sewer passes under her home at a fairly steep grade and comes out to Front Street, it is leveled off on a slight grade under Front Street and empties at a distance of about 150 feet into George's Creek.

This sewer, thirty inches in diameter, was constructed over thirty years ago and ever since that time, during hard rains, rocks and stones have gone down it with the water and have made much noise. At its intake or opening where the water from the mountains is led into the sewer, iron bars are placed six or seven inches apart, thereby permitting rocks of that size to go through with the water. As this sewer crosses each street on Westernport Hill, there is a catch basin which empties all surface water from those streets into the sewer. Also along its entire course, private sewage from homes is poured into it.

A municipality is liable not only for negligence in the construction of a sewer, but also for negligence in failing to keep it in proper repair. *Mayor etc., of Frostburg v. Dufty,* 70 Md. 47, 54, 16 A. 642. See Article Maryland Law Review, Volume III, page 172.

The fact that a property owner's land is flooded because of an extraordinary rainfall does not relieve the municipality from liability, where such rainfall would not have caused the damage in the absence of the clogging up or stoppage of the sewer, caused by the negligence of that municipality. *District of Columbia v. Gray,* 6 App. D. C. 314; *Spangler v. San Francisco,* 84 Cal. 12, 23 P. 1091; *Geiger v. St. Joseph,* (Mo. App.) 198 S. W. 78; *Woods v. Kansas,* 58 Mo. App. 272; 43 A. L. R., page 970.

In *Krantz v. City of Baltimore,* 64 Md. 491, 2 A. 908, the City had converted a running stream into a public sewer by covering it over and had assumed control over this sewer which ran under plaintiff's house. There was testimony that this sewer had burst on several previous occasions, that at the time of the breakage there were debris and stones in the sewer which helped it to burst and that this condition had been called to the attention of the Mayor. This Court there held that this testimony was enough to warrant the jury in finding, at least, that the repairs were carelessly and negligently

made, and that this, in connection with the bad condition of the sewer in other places, caused it to burst.

In *Livezey v. Town of Bel Air,* 174 Md. 568, 199 A. 838, this Court said that a municipality in establishing drains and sewers is subject to liability if they are so constructed and maintained as to create a private nuisance or injure another.

In the case of *Mayor & City Council of Baltimore v. Henry Schnitker,* 84 Md. 34, 34 A. 1132, plaintiff's cellar was flooded by water which burst through the manhole of the sewer during an extraordinary rainfall. Action for damages was brought against the municipality. It was there held that defendant could only be held liable upon proof of negligence either in the construction or maintenance of the sewer and in that case it was not claimed that the sewer was improperly constructed. It also held that there was no evidence sufficient to show that the sewer was obstructed at the time of the rainfall, or, if obstructed, that the defendant was negligent in failing to remove the obstruction after notice. This Court said in that case 84 Md. at page 42, 34 A, at page 1133, "Nor is there a particle of legal evidence in the cause going to show that if any obstruction existed the defendant had notice of it, or by the exercise of proper care it might have known of its condition."

In *Mayor and Council of Salisbury v. The Camden Sewer Co.,* 141 Md. 254, 118 A. 662, the sewer company sued the City for negligently and carelessly maintaining catch basins and for negligently and carelessly permitting surface water to be drained into the plaintiff's sewer so as to cause said sewer to be filled up with debris which resulted in damage to the appellee. It was said in that case in affirming the judgment for damages, 141 Md. at page 265, 118 A. at page 666: "Where the evidence produced by the plaintiff is sufficient to fasten responsibility for the injury upon the defendant, any conflict between it and the evidence produced by the defendant is a matter for the jury, and it is for the jury to say which they will accept."

In deciding, of course, whether a judgment N.O.V. should have been granted, the court should resolve all conflict in the evidence in favor of the plaintiff, should assume the truth of all evidence and all inferences which may be naturally and legitimately deduced therefrom which tend to support the plaintiff's claim. *Armiger v. Balto. Transit Co.*, 173 Md. 416, 425, 426, 196 A. 111; *Dean v. Scott*, 196 Md. 70, 75 A. 2d 83. We will so review the evidence on the question of negligence of the municipality in failure to keep the sewer in condition and remove the stoppage.

Appellant purchased this two-story house on June 30, 1948, not knowing the sewer was under her home. When the first rain came she heard rocks coming through this sewer. These rocks tore out the pipe leading from her sink into the sewer. She said every time there was a hard rain, the rocks came through. Two months before the flooding of the house on July 12, 1949, accompanied by her brother-in-law, Mr. William Droege, she went to see the Mayor of Westernport, a Mr. Ravenscroft, at the Council Chamber. Present with the Mayor was the Town Clerk, a Mrs. Daily. She told him that she heard they were going to move the sewer pipe and asked him to take the pipe out from under her house because she was afraid of the rocks coming through. She told him that this happened every time it rained and she was afraid the rocks would burst the sewer pipe under her house and flood it. The Mayor replied that if they moved the pipe they would take it out from under her house and put it beside the house. He said: "We are not going to take the pipe out now." He said the water would not break the sewer. He did not say he would do anything about preventing the rocks coming through. She testified that she had walked over the George's Creek Bridge, under which the sewer emptied into that creek, a number of times and saw there was only about a twelve inch opening where the sewer emptied into that creek, rocks having dammed up the opening of the sewer. She said she told the Mayor that the sewer

pipe was closed up, that the water could not get through and she was afraid it would back up and burst back of her house, that that was what had broken the pipe above her house before. She told him that the sewer was not safe because it did not have an outlet for the water down at the creek. She further testified that it had rained all day on July 12th but that there was no cloud-burst. On that day the pipe had broken back of her house. She immediately called the Mayor and Town Council and told them the pipe had burst. She said the reason the sewer pipe broke was because it was backed up with rocks. She said when she saw the sewer break it was full of rocks and water. After the flood, two truck loads were taken out of the sewer right at her house. She was told at that time that this stoppage caused the break. After the flood, mud and rocks were piled up on her porch about four feet deep, and mud and water to the depth of from fifteen to eighteen inches entered her house through the back door, going out through the front door. The water not only damaged her house but also her furniture.

William Droege said he accompanied the appellant on her hereinbefore recited visit to the Mayor's office and she told the Mayor that she was afraid the rocks would stop up the sewer and thereby her house would be flooded, that the rocks came through every time it rained. He said the Mayor told appellant that the expense would be too great to move the pipe at that time. He assured her that the sewer was large enough to take care of all the water and that she need not worry about it. He said he told the Mayor that the sewer line was not safe because the rocks down there would ordinarily stop up the sewer during a hard rain. He said that on the day of the flood the rocks coming through the sewer sounded like someone thumping on the floor. About four o'clock in the afternoon of the flood, appellant ran in the house and told him the sewer was broken. He went out back and found that the sewer was "humped up" and was working up and down and at the loose joints there were

"streams of water coming up about twelve inches". He told the appellant that the sewer was going to break and told her the only thing was to call the Mayor, which she did. He knew the sewer would break. He realized from the vibrations in the pipe that the rocks were really stopping the sewer.

A witness, C. W. Gretchner, testified that before the flood of July 12th, he observed the condition of the sewer at the outlet into George's Creek and said about two-thirds of it was stopped up and he noticed this condition for months before the flood. He said that on the day of the flood the appellant called him and told him that she thought the water would come through her house and that she had tried to get the Mayor's office and received no answer. He also testified that, in 1932 when there was a flood, water went through this same house.

Floyd Dixon testified that he was acquainted with appellant's home on Front Street in Westernport. He lived downstairs in that house in 1941 or 1942. At one time when he heard noises he went to see the cause and under the house he saw a piece of broken terra cotta "laying" over a hole and he could look down into the sewer. Every once in "a while" he could see rocks coming through the sewer. He said that after the flood he was there when the men were digging out for the town. Just below appellant's house the sewer line was just "thrown together". He said the sewer pipe was clogged up. Two days after the flood he also saw the bursted pipe back of appellant's house and he watched the workmen take out some of the pipe and some big rocks in it.

Mayor Ravenscroft admitted that the rocks and boulders came down the sewer and made a noise but he did not pay much attention to it for it had been going on for thirty-eight years.

Mr. Glass, appellee's water superintendent, testified that in the past five years they had repaired the terra cotta in two different places where it had broken and replaced it with concrete pipe. He also testified that after the flood the terra cotta pipe under appellant's

house was not broken. It was broken above her house in the yard and after the flood the town started at the street in front of appellant's house and laid six hundred feet of concrete pipe from the street up the hill under her house and back of her house. He also said where the sewer leveled off it caused sediment to settle in the level places. There is testimony here that for the one hundred and fifty feet from appellant's house to the creek, the sewer levels off somewhat.

The appellant said on the day of the flood it had rained hard but there was no cloudburst. Mr. Droege said that he had seen it rain just as hard. He did not think there was anything out of the ordinary in that rain. Mr. Dixon said that, although it rained hard, he did not see anything unusual about it.

We are of opinion that the jury could have found from this testimony that there was a long and hard rain that day but no cloudburst; that on the day of this rain the sewer was clogged up in front of the appellant's home and at its end in George's Creek; that this stoppage was caused by rocks coming through the sewer; that the terra cotta sewer had broken at least twice previously and had been replaced at those places with concrete; that the municipality had been notified and by the exercise of proper care might have known of the stoppage in the sewer by the rocks; that by the failure of the municipality to remove the stoppage of rocks in the sewer, appellant's house was flooded; and that after notice given, the municipality was negligent in failing to keep the sewer in proper condition and remove the stoppage.

Even though the trial judge may have considered the appellant's evidence weak and inconclusive, yet it apparently was derived from a legal source and pertinent to the issue and the jury was the proper tribunal to pass upon it.

The judgment N.O.V. will be reversed.

In this case the appellee filed a motion for a new trial and for judgment N.O.V. The trial judge did not rule on the motion for the new trial but granted the judg-

ment N.O.V. Rules of Practice and Procedure, part 3, subd. III, Trials, Rule 8, provides in part: "A motion for a new trial may be joined with a motion for judgment (N.O.V.) under this rule or a new trial may be prayed in the alternative. * * * (c) Appeal. Whenever a judgment so entered by the trial court is reversed on appeal, the Court of Appeals (1) shall remand the case for a new trial if the lower court conditionally so ordered or (2) otherwise may order a new trial or enter such judgment upon the original verdict as may be just." As the trial judge did not rule upon appellee's motion for a new trial, we will remand the case for a ruling by the trial judge on that motion.

*Judgment reversed, with costs, and case remanded for further proceedings.*