MORRIS LIPSITZ *v.* WILLIAM A. PARR, BUILDINGS ENGINEER, ET AL.

[No. 112, October Term, 1932.]

*Decided February 15th, 1933.*

224

The cause was argued before BOND, C. J., URNER, AD-KINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Louis S. Ashman,* for the appellant.

*R. E. Lee Marshall, City Solicitor,* and *Ernest F. Fadum, Assistant City Solicitor,* for the appellees.

PARKE, J., delivered the opinion of the Court.

Morris Lipsitz, trading as Northwestern Lumber Company, began on February 16th, 1932, a proceeding in the Circuit Court of Baltimore City against William A. Parr, buildings engineer of the Mayor and City Council of Baltimore City, and the named members of the board of zoning appeals of Baltimore City, to restrain these defendants and their agents from interfering with a permit, issued on January 4th, 1932, to the plaintiff, to erect a building in which to manufacture ice at the northwest corner of Calhoun and Winchester Streets, in Baltimore City.

Two days after the permit was given, the plaintiff leased the premises to a tenant, who is not a party to these proceedings, for a term of five years, with the privilege of renewal for a similar term. The lease was in writing, but was neither acknowledged nor recorded. The words of the permit unquestionably granted the plaintiff permission to erect an ice manufacturing building, and carried an indorsement that the use of the land and structure applied for was in conformity with the provisions of the zoning ordinance approved March 30th, 1931. However, the land upon which the building was so authorized to be built was in one of the zones

of the city, designated as "Second Commercial Use Districts," in which an ice factory was prohibited. Ordinance No. 1247, par. 6, class 32; Acts of 1927, ch. 705, pp. 1607-1614 (Code [Supp. 1929], art. 66B, secs. 1-9). Accordingly, the plaintiff was duly notified by an official letter, under date of January 21st, 1932, that the permit was revoked and annulled as being violative of law and as having been issued by the inadvertence and mistake of a clerk. The plaintiff had proceeded with the erection of the plant, pursuant to the purporting permit issued on January 4th, and, for the purpose of protecting the existing construction from deterioration, and the public and property, a temporary permit was issued to the plaintiff authorizing him to resume the work of construction pending action by the board of zoning appeals. On further consideration, the temporary permit of January 23rd was revoked on January 27th, 1932, and the plaintiff was ordered to cease all work until the appeal before the board of zoning appeals had been decided.

Before this appeal was determined, the suit in equity for an injunction was begun, and, upon the filing of the bill of complaint, the chancellor passed an order requiring the defendants to show cause why an injunction should not issue as prayed, and directing that meanwhile, and pending the final decree of the court, the plaintiff should be permitted to proceed with the construction of the building then in course of erection pursuant to the permit in question, provided, however, that the order of the chancellor and whatever might be done by the plaintiff pursuant to its tenor should be without prejudice to the rights or powers of the defendants under any and all valid laws or ordinances equitably or legally applicable to the plaintiff in reference to the subject-matter of the litigation.

The defendants answered the bill of complaint and alleged that the permit of January 4th, 1932, was invalid and had been issued by mistake and without authority; and, on May 7th, 1932, filed a petition for an order enjoining the plaintiff from operating the premises as an ice plant and from manu-

facturing and selling ice therein in violation of the city ordinance with respect to zoning. The cause was heard before the chancellor, who gave the questions involved careful consideration, embodied his conclusions on the facts and the law in an able and thorough opinion, and decreed, on September 29th, 1932, a dismissal of the plaintiff's bill of complaint, and the defendants' petition of May 7th, 1932, but amply protected the interests of the parties by preserving for the plaintiff his right to prosecute his appeal now pending before the board of zoning appeals and his privileges, if any there be, under a permit of October 7th, 1930, to use the building for the manufacture of ice cream; and by reserving to the municipality whatever right it may have to proceed either against the plaintiff's tenant to enforce the provisions of the zoning ordinance, or against the plaintiff for any use by him of the building in any manner and for any purpose not allowed by law.

The bill of complaint proceeds upon the grounds that the municipality is barred from denying the plaintiff's right to use the premises as an ice factory by laches and estoppel, and by the asserted invalidity of the restriction prohibiting an ice factory within the district where plaintiff's property is situated.

Laches is an equitable defense. It is an inexcusable delay, without necessary reference to duration, in the assertion of a right. No basis is found for the application of that doctrine to the facts of this record. *Hagerty v. Mann,* 56 Md. 522, 525, 526; *Kaliopulus v. Lumm,* 155 Md. 30, 42, 141 A. 440; *Sinclair v. Auxiliary Realty Co.,* 99 Md. 223, 234, 57 A. 664; *Lawson v. Mullinix,* 104 Md. 156, 170, 171, 64 A. 938; *Boggs v. Dundalk Realty Co.,* 132 Md. 476, 481, 104 A. 45. Laches and estoppel possess elements in common, and difficulty is encountered in clearly stating the distinction, particularly as the courts have studiously avoided a general or inflexible definition of laches, in order to be free to apply its principles to the particular circumstances of the instant case. *Robertson v. Mowell,* 66 Md. 530, 539, 8 A. 273; *Wood on Limitations,* secs. 60, 63.

Unless mounting to the statutory period of limitations, whose application is not denied upon equitable considerations, mere delay is not sufficient to constitute laches, if the delay has not worked a disadvantage to another. *Demuth v. Old Town Bank,* 85 Md. 315, 326, 37 A. 266; 4 *Pom. Eq. Juris.* (4th Ed.), secs. 1442, 1443; *Wood on Limitations,* secs. 60, 61.

There was no blameful delay by the municipality, and so the question of estoppel must be considered.

A municipality may be estopped by the act of its officers if done within the scope and in the course of their authority or employment, but estoppel does not arise should the act be in violation of law. Paragraph 31 of the ordinance forbade the officials of the municipality to grant the permit which the plaintiff asked and obtained; and paragraph 41 made it a misdemeanor for the plaintiff to use his premises as a factory to make ice as the invalid permit purported to empower.

If the provision of the ordinance be constitutional, it was therefore unlawful for the officers and agents of the municipality to grant the permit, and it would be unlawful for the licensee to do what the purporting permit apparently sanctioned. A permit thus issued without the official power to grant does not, under any principle of estoppel, prevent the permit from being unlawful nor from being denounced by the municipality because of its illegality. In the issuance of permits pursuant to the ordinance at bar, the municipality was not acting in any proprietary capacity nor in the exercise of its contractual powers, but in the discharge of a governmental function through its public officers of limited authority, and the doctrine of equitable estoppel cannot be here invoked to defeat the municipality in the enforcement of its ordinances, because of an error or mistake committed by one of its officers or agents which has been relied on by the third party to his detriment. Every one dealing with the officers and agents of a municipality is charged with knowledge of the nature of their duties and the extent of their powers, and therefore such a person cannot be considered

to have been deceived or misled by their acts when done without legal authority.

So, even where a municipality has the power, but has done nothing, to ratify or sanction the unauthorized act of its officer or agent, it is not estopped by the unauthorized or wrongful act of its officer or agent in issuing a permit that is forbidden by the explicit terms of an ordinance. *J. Burton Co. v. Chicago,* 236 Ill. 383, 86 N. E. 93, 96, 15 Ann. Cas. 965; and see *Bower on Estoppel by Misrepresentation,* secs. 217, 218; *Hibbard, Spencer, Bartlett & Co. v. Chicago,* 173 Ill. 91, 50 N. E. 256, 258; *New York, N. H. & H. R. Co. v. York & Whitney Co.,* 215 Mass. 36, 102 N. E. 366, 368; *Monson v. Trippe,* 81 Me. 24, 16 A. 327; *Ramsey County v. Nelson,* 51 Minn. 79, 52 N. W. 991, 993; *Nashville, Tenn., v. Ray,* 19 Wall. 468, 22 L. Ed. 164; *Fowle v. Alexandria,* 3 Pet. 398, 409, 7 L. Ed. 719; *Valentine v. Road Directors,* 146 Md. 199, 206, 126 A. 147; *Baltimore v. Eschbach,* 18 Md. 276, 283; *Baltimore v. Reynolds,* 20 Md. 1, 10, 11; *Johnson v. Frisbie,* 29 Md. 76, 83; *State v. Kirkley,* 29 Md. 85, 110; *Baltimore v. Musgrave,* 48 Md. 272, 283; *Baltimore v. Keyser,* 72 Md. 106, 108, 19 A. 706 *Mealey v. Hagerstown,* 92 Md. 741, 753, 48 A. 746; see *Smith v. Standard Oil Co.,* 149 Md. 61, 70, 130 A. 181. Compare *Hagerstown v. Hagerstown Rwy.,* 123 Md. 183, 192, 91 A. 170, in which the rule here applied is stated but not enforced because of facts which distinguish it from the record on the present appeal.

It follows that, because the ordinance prohibited the use of the premises in question for the making of ice by artificial methods, any permit issued would be void, and the person who received the permit would derive no benefit, and whatever he might do in pursuance of this permission would be at his own risk and loss, unless the prohibition itself were void.

By chapter 705 of the Acts of 1927, the General Assembly of Maryland empowered the Mayor and City Council of Baltimore City, and the legislative bodies of cities and incorporated towns of the state containing more than 10,000

inhabitants, to regulate and restrict the height, number of stories and size of buildings and other structures, the percentage of the lot that may be occupied, the size of yards, courts, and other open spaces, the density of population, and the location and use of buildings, structures, and land for trade, industry, residence, or other purposes. The purpose of this legislation was declared to be the promotion of the health, security, general welfare, and morals of the community. In the furtherance of these objects, the local legislative body was authorized to divide the municipality into districts of such number, shape, and area as might be considered best suited to the design of the legislation; and, within such districts, to regulate and restrict the erection, construction, reconstruction, alteration, repair, or use of buildings, structures, or land, provided that, while there might be difference in the regulations and restrictions among the districts, the regulations and restrictions within every district should there be uniform for each class or kind of building. These regulations and restrictions are required to be made in accordance with a comprehensive plan, and designed to lessen congestion in the streets; to secure safety from fire, panic, and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population; to facilitate the adequate provision of transportation, water, sewerage, schools, parks, and other public requirements; and all to be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout the municipality. *Bagby's Code* (Supp. 1929), art. 66B, secs. 1, 2, 3.

The object of setting forth these provisions in the language of the statute is to show the scope and nature of the enactment, and, especially, what the Legislature regarded as conducive to health, security, general welfare, and morals of the community. The remaining sections of the enactment related to preliminary procedural matters; to the method of

making changes, from time to time, in the regulations, restrictions, and boundaries; to the creation of an administrative body to be known as the zoning commission, and of an appellate tribunal called a board of zoning appeals, and to enforcement and remedies. Sections 4-9.

The title to Ordinance No. 1247 indicates a subject-matter in full conformity with the power in terms conferred by the General Assembly. The language of the ordinance is in close adaptation to that of the statute, and the provisions are of the specified and defined character authorized by the Legislature. So what the Legislature has distinctly declared may be done cannot be annulled by the courts because they may consider the thing, when so authoritatively done, to be unreasonable or against sound policy. *Dillon on Municipal Corporations* (5th Ed.), sec. 600; *Fire Department of New York v. Gilmour,* 149 N. Y. 453, 44 N. E. 177; *District of Columbia v. Waggaman,* 4 Mackey (15 D. C.) 328. The rule is different if the ordinance had been passed under the incidental authority of the municipality or under a grant of power of a general nature. So, unless the ordinance is void, in whole or in part, because repugnant to a constitutional inhibition, or the particular provision at bar is not within the grant of the power conferred upon the municipailty by article 66B of the Code, the ordinance will be sustained.

After the decision at the current term in the case of *Jack Lewis, Inc., v. Baltimore,* 164 Md. 146, 164 A. 220, the constitutionality of the general provisions of Ordinance No. 1247, passed on March 30th, 1931, by the Mayor and City Council of Baltimore, would seem to be implicitly recognized, with the exception of section (par.) 32, subsection g-3 and section (par.) 33, subsection (b), which were held invalid for plain and clearly stated reasons. The pending appeal will therefore be restricted to the question whether or not the prohibition of a factory for the commercial making of ice within a certain district in Baltimore City is unlawful. In the solution of the problem, it is not essential to the validity of this restriction that its necessity as a public measure shall clearly be demonstrated. Unless it can be held to

have no reasonable tendency to serve any proper purpose of the police power, the restriction may not rightfully be declared invalid. *R. B. Construction Company v. Jackson,* 152 Md. 671, 674, 137 A. 278; *Pocomoke City v. Oil Co.,* 162 Md. 368, 380, 159 A. 902.

The ordinance divides the municipality of Baltimore into four classes of use districts, which are designated, respectively, industrial use districts, second commercial use districts, first commercial use districts, and residential use districts. Industrial uses and the industrial use districts are the lowest classification, and the residential uses and the residential use district are the highest classification. Uses excluded in one use district are excluded from use districts of the higher grades. The comprehensive zoning ordinance now in force in Baltimore City is the result of a thorough survey of the situation, and a careful and intelligent adoption of a complete system of zoning under the enabling legislation now embodied in article 66B of the Code.

The court is now not concerned with every one of the many details of the ordinance, but with one in particular, with reference to which this decision is confined. The restriction involved is shown by the record to be the deliberate judgment of competent authority. It has been subjected to rigorous scrutiny in consequence of a direct denial that it has any relation to a proper exercise of the police power, and it has been declared by the chancellor to bear a substantial relation to the public health, security, and general welfare of the community. These are weighty considerations, because neither the Legislature nor the municipality may deny to the owner the free, full, and lawful use of his property under the guise of the police power, unless the inhibition is reasonably referable to one of the objects which are embraced within the exercise of that power.

The site of the proposed ice factory is on the northwest corner formed by the intersection of Calhoun and Winchester Streets. The latter street runs east and west, and its center line divides the residential use district to the south from the second commercial use district to the north, in which the

premises are located. The artificial making of ice in a factory involves the mechanical conversion by compression of a large quantity of aqueous ammonia into ammonia, a colorless, pungent, suffocating gas, and then its reconversion in recurring cycles of transformation, until consumed in the process, which requires in its operation power generated by gas, gasoline, steam, or electricity. Supplies of various kinds and natures would be hauled to the factory, whose bulky product would daily be loaded and removed by motor trucks and other cumbersome vehicles in movements which would temporarily concentrate and retard, and, so, impede, vehicular traffic, and therefore increase the fire hazard of the neighborhood. An examination of the factories and manufacturing enterprises enumerated in the list of those excluded from second commercial use districts will establish that a large number possess striking analogies to an ice factory, and induce the conviction that the classification made is neither arbitrary, unreasonable, nor discriminatory, but that an ice factory is one of a class whose inherently objectionable nature justified, for the purpose of promoting the health, security, and general welfare of the community, the inclusion of its units in a group to be segregated in a district other than the one dedicated by the ordinance to the more desirable, less dangerous, and more healthful commercial uses allocated to the second commercial use districts. *Etchison v. Frederick City,* 123 Md. 289, 91 A. 161; *Baltimore v. Bloecher & Schaaf,* 149 Md. 659, 132 A. 160; *Village of Euclid, Ohio, v. Ambler Realty Co.,* 272 U. S. 391, 47 S. Ct. 114, 71 L. Ed. 303.

In reaching this conclusion, the court has taken into consideration all the testimony that is on the record and proper to be admitted. It does not ignore that something may be said in support of a different view. There are few questions which do not admit of argument, but something more than admissible controversy is required. *Zahn v. Board of Public Works of City of Los Angeles,* 274 U. S. 328, 47 S. Ct. 594, 71 L. Ed. 1074; *State v. Hyman,* 98 Md. 596, 615, 616, 57 A. 6. The restriction here must be held within the scope

of the power conferred by the General Assembly, unless it "is so clearly unreasonable, so arbitrary, oppressive or partial, as to raise the presumption that the Legislature never intended to confer the power to pass it, and to justify the courts in interfering and setting it aside as a plain abuse of authority." *Baltimore v. Radecke,* 49 Md. 229.

When the statute is given its proper perspective, it becomes manifest that the enactment empowered the municipality to pass the zoning ordinance in the instant case, and that its provisions are within the purview of the statute. Furthermore, the particular restriction that no ice factory be permitted to be constructed within a second commercial use district operates perspectively and uniformly, and does not deprive any owner of property of any constitutional right with respect to his specific property, because, as has been seen, the restriction is fairly and reasonably referable to one or more of the objects contemplated in the proper exercise of the police power, which is concerned with the promotion of the health, security, general welfare, and morals of the community. The cases of *Pocomoke City v. Oil Co.,* 162 Md. 368, 159 A. 902, and of *Jack Lewis, Inc., v. Baltimore,* 164 Md. 146, 164 A. 220, in which the opinion was filed on January 19th, 1933, are decisive of the constitutionality of the restriction in the present appeal, and are so recent as to make anything more than a reference unnecessary. *R. B. Construction Co. v. Jackson,* 152 Md. 671, 137 A. 278; *Cook v. Howard,* 155 Md. 7, 10-12, 141 A. 340; *Tighe v. Osborne,* 150 Md. 452, 457-463, 133 A. 465; *Cooley's Constitutional Limitations* (8th Ed.), 1315-1321; *Willoughby on Constitution of U. S.* (2nd Ed.), sec. 1190; *Village of Euclid, Ohio, v. Ambler Realty Co.,* 272 U. S. 365, 47 S. Ct. 114, 71 L. Ed. 303; *Zahn v. Board of Public Works of City of Los Angeles,* 274 U. S. 325, 47 S. Ct. 594, 71 L. Ed. 1074; *Hadacheck v. Sebastian,* 239 U. S. 394, 36 S. Ct. 143, 60 L. Ed. 348. See *Applestein v. Baltimore,* 156 Md. 40, 143 A. 666; *Prince George's County Commrs. v. Cemetery Co.,* 160 Md. 653, 154 A. 452; *Goldman v. Crowther,* 147 Md. 293, 128 A. 50;

234

*Tighe v. Osborne,* 149 Md. 349, 131 A. 801; *State v. New Orleans,* 154 La. 289, 97 So. 446.

The court has lately had for consideration the relation of the constitutional protection of property to the police power, with the result that it is now established that reasonable regulation, which is not confiscatory, but which leaves the owner in substantial enjoyment of his property, although diminishing its value through the restriction of its use, is valid without compensation. A confiscatory regulation, such as is illustrated by the case of *Nectow v. City of Cambridge,* 277 U. S. 183, 48 S. Ct. 447, 72 L. Ed. 842, where the regulation denied to the land every use but one, and that without value, would, however, be equivalent to taking and be invalid without compensation. The difference between taking and regulation may therefore be one of degree. *Eaton v. Sweeny,* 257 N. Y. 176, 177 N. E. 412.

As the decree of the chancellor is in conformity with the recent adjudications of this court, and preserves the respective rights of the parties, we find no ground of reversal.

*Decree affirmed, with costs to be paid by the appellant.*