## TOWN OF BERWYN HEIGHTS *v.* ROGERS

[No. 220, September Term, 1961.]

*Decided April 10, 1962.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT, HORNEY and SYBERT, JJ.

*Philip J. LaMacchia* for the appellant.

*Thomas B. Yewell,* with whom were *Welsh & Lancaster* on the brief, for the appellee.

PRESCOTT, J., delivered the opinion of the Court.

The appellant, a municipal corporation, brought suit in the Circuit Court for Prince George's County to enjoin the construction, by the appellee, of a dwelling being erected by him on a lot located in the Maryland-Washington Regional District (District) on the ground that such construction violated certain provisions of the Zoning Ordinance for the District.

There is little, if any, dispute concerning the facts. The appellee, a builder of dwellings, on or about May 7, 1961, began construction of a residence on a corner lot, known as Block 34, Lot 40, in Berwyn Heights, bearing a residential zoning classification of R-55. Appellant's Exhibit No. 1 shows that the lot, 50' x 200' fronts on Edmonston Road and abuts on Pontiac Street along its side street line, and that the rear lot adjoining Lot 40 fronts on Pontiac Street. Exhibit No. 1 further shows that the appellee established a side building line and side yard of 17 feet. The dwelling is 24 feet wide. Construction was begun only after appellee had received building permits from both the appellant's and the county's building inspectors, and construction was in conformity with said per-

mits. However, appellant concluded that a mistake had been made in the issuance of said permits, and placed a stop work order on further construction. Appellant then wrote the County Commissioners, who referred its letter to the Administrator, Department of Licenses and Permits. The Administrator wrote the appellant that the appellee had complied with the zoning regulations, and "has approval of all required agencies." This suit followed.

## I

The first question involved is whether the trial court had jurisdiction to entertain the suit for injunction. The appellant relies upon the provisions of Sec. 99 of Ch. 780 of the Acts of 1959, which, after making the construction of any building in violation of any of the provisions of "this sub-title," or of any of the provisions of any regulation enacted under said sub-title unlawful, states:

> "In addition to all other remedies provided by law, * * * [the] public officials of any municipality or political sub-division within the Regional District, * * * may institute injunction, mandamus, or other appropriate action or proceeding to prevent such unlawful construction, * * * or use. Any court of competent jurisdiction has jurisdiction to issue restraining orders and temporary or permanent injunctions or mandamus or other appropriate forms of remedy or relief."

The appellee acknowledges the statute, which, of course, he must, but argues that irrespective thereof, the appellant could not avail itself of relief thereunder until it had exhausted its administrative remedies, such as the right to appeal to the Board of Zoning Appeals under Section 29.5 of the Zoning Ordinance.

It is a well-established general rule, to which there are exceptions, that where an administrative remedy is provided by statute, such remedy must usually be exhausted before a litigant may resort to the courts. Maryland cases to this effect are collected in 1 M. L. E., *Administrative Law and Pro-*

*cedure,* §§ 5, 6 and 7. But in the instant case, we think the Legislature, by clear and forceful terms, showed an intention to create alternate and additional remedies to the administrative ones named in the statute and those created by regulations authorized by the statute. The words, "in addition to all other remedies provided by law" are plain and unambiguous, and must be given the import that the Legislature intended them to have. Where administrative remedies are not exclusive but merely cumulative to or concurrent with a judicial remedy, the rule that administrative remedies must be exhausted before resort is had to the courts does not come into play. 42 Am. Jur., *Public Administrative Law,* §§ 199, 252, and 255; 73 C.J.S. *Public Administrative Bodies & Procedure,* § 41, p. 354; *Scripps Memorial Hospital v. California Emp. Com'n,* 151 P. 2d 109, 112 (Cal.) ; *City of Susanville v. Lee C. Hess Co.,* 290 P. 2d 520, 523 (Cal.) ; cf. *Pressman v. Barnes,* 209 Md. 544, 549, 121 A. 2d 816; *Reed v. McKeldin,* 207 Md. 553, 558, 115 A. 2d 281. We hold that the chancellor was correct in assuming jurisdiction.

## II

The next question involves an interpretation of several sections of the zoning ordinance.[1] It will be noted that the sub-

---

1. "14.32 *Building Line, Side*
   Same as specified for R-R Zone (See Section 13.32)"

   * * *

   "13.32 *Building Line, Side*
   Each corner lot shall have a side building line at least twenty-five (25) feet from, and parallel to, the side street line or a proposed side street line, if such has been established within the lot; except that, when the lot adjoining said corner lot along the rear line thereof does not front on the side street of the corner lot or is in a non-residential zone, the side building line of the corner lot may be reduced to a minimum of fifteen (15) feet from, and parallel to, the side street line or proposed side street line."

   * * *

   "14.522 Each corner lot shall have a side yard along its street side, as specified in Section 13.522."

   * * *

   "13.522 *Corner Lots*
   Each corner lot shall have a side yard along its street side

ject lot is a corner one with its side street line running along Pontiac Street; that the rear lot adjoining it is zoned for residential use and fronts on said street; that appellee established a side building line and side yard of only 17 feet; and the building under construction is 24 feet wide. The issue narrows to whether section 27.5, properly construed, exempts the appellee from complying with the minimum (25 feet) set back requirements of sections 14.32 and 14.522. It is obvious that the 15 foot minimum mentioned in certain of the sections has no application to the facts of this case; because it is uncontroverted that the adjoining lot along the rear of the subject lot faces on Pontiac Street and is not zoned for other than residential use, one, or both, of which conditions must exist in order to bring the 15 foot minimum into play.

We think the sections quoted are plain and unambiguous and the legislative scheme underlying them is clear. Sections 14.32 and 13.32 provide that "each corner lot shall have a side building line at least twenty-five (25) feet from, and parallel

at least twenty-five (25) feet in width, except when the lot adjoining said corner lot along the rear line thereof does not front on the side street of the corner lot or is in a non-residential zone, the side yard of the corner lot may be reduced to a minimum of fifteen (15) feet in width, except as provided in Section 27.5."

* * *

"27.0 The regulations specified in this Ordinance shall be subject to the following exceptions and interpretations:

* * *

"27.5 *Greater Established Front-Yard Depth and/or Side-Yard Width of Corner Lot*
When the majority of lots on one (1) side of a street between two (2) intersecting streets has, previous to the enactment of this Ordinance, been lawfully occupied with buildings having greater front-yard depths than required by these regulations, no building hereafter erected or altered shall have a less front-yard depth than the average depth of said existing front yards. This regulation shall apply also to the side-yard of a corner lot but shall not be so construed as to reduce to less than twenty-four (24) feet the buildable width of a corner lot. * * *."

to, the side street line," subject to certain exceptions. Sections 14.522 and 13.522 provide the same minimum widths for side yards of corner lots, with exceptions. And section 27.5 provides for "interpretations and other exceptions." From the above, it seems clear, we think, that minimum set backs of 25 feet for side building lines and minimum widths of 25 feet for side yards of corner lots are required, unless the corner lot qualifies for a different set back or width under one or more of the named exceptions. Hence, it becomes necessary that we determine whether the subject lot comes within the scope of the exceptions. Since the provisions relating to side building lines and side yards (although in practice the same end result is probably reached) are not identical and the real controversy here concerns the provisions concerning side yards, we shall confine our further consideration of this contention to side yards.

We have already stated that the 15 foot exception has no application to the facts of this case. Section 14.522 (by reference to section 13.522), after setting forth the minimum width of 25 feet, further provides:

> "* * * except when the lot adjoining said corner lot along the rear line thereof does not front on the side street of the corner lot * * * the side yard of the corner lot may be reduced to a minimum of fifteen (15) feet in width, *except as provided in Section 27.5*." (Emphasis added.)

The italicized language persuaded the chancellor to hold that section 27.5 must be read as an exception to the minimum side yard width requirement of 25 feet called for in section 13.522. He reasoned that inasmuch as the appellee had used a buildable width of not more than 24 feet and section 27.5 provides that it "shall not be so construed as to reduce to less than twenty-four (24) feet the buildable width of a corner lot," the minimum side yard width requirements of 25 feet had to accede to the overriding provisions of section 27.5.

In making this ruling, the chancellor fell into error. It is significant, we think, that section 27.5 begins with the heading, *"Greater Established Front-Yard Depth and/or Side-*

*Yard Width of Corner Lot.*" In addition, a careful reading of said section makes it plain that under certain circumstances the minimum side yard width of 25 feet (and under certain conditions of 15 feet) as required by section 13.522 may be enlarged; however, there is no provision in section 27.5 for lessening the 25 and 15 foot widths. If the circumstances are such that the 25 and 15 foot minimums required by section 13.522 would be enlarged pursuant to the average depth and width requirements of section 27.5, said section provides, "this regulation * * * shall not be so construed as to reduce to less than twenty-four (24) feet the buildable width of a corner lot," which means, of course, that the average depth and width requirements may not be invoked, if to do so would result in reducing the buildable width of a corner lot to less than 24 feet. We think the quoted words are words of limitation which qualify the use of the average depth and width formula of section 27.5, but may not be utilized to reduce the minimums named in section 13.522; that if said formula is not brought into play to enlarge the side yard minimums (as is the situation in this case), the words of limitation remain passive and without operative force. Simple arithmetic may be utilized to emphasize the correctness of this conclusion. If the 24 foot buildable width criterion be absolute and precludes the application of the minimums of section 13.522, then it inevitably follows that the footage in excess of 24 feet, if any, controls the side yard widths. Thus, they could vary from zero upwards. This result would certainly not comport with the concept of uniformity sought to be achieved by zoning laws. We hold that section 27.5 is not controlling in the case at bar, and, as it is conceded that the side yard only has a width of 17 feet, it necessarily follows that appellee's structure is being built in violation of the zoning ordinance.

### III

In his brief, the appellee argued that the appeal should be dismissed because the appellant failed to file a supersedeas bond. However, he virtually abandoned the contention at oral argument; hence we do not deem it necessary to consider and determine the same.

## IV

The appellee further argues that under the rule "of contemporaneous construction of statutory enactments," the court properly construed section 27.5; because there had been "an interpretation by the cognizant body" the appellee had not violated any section of the zoning ordinance and was entitled to proceed with construction. The short answer to this contention is that the rule he attempts to invoke is only applied when there are at least two possible, reasonable interpretations that can be given to a statute, ordinance, regulation, etc. We have already stated we find no ambiguity in the sections of the zoning ordinance involved herein as they apply to the present case; hence there is no occasion to apply the rule of long-continued administrative practice. Where the language is clear, plain and unambiguous, the judicial construction must be controlled by the language itself, not by extraneous considerations. No custom, however long continued, hoary and venerable it may be, can void the plain meaning and purpose of a zoning ordinance. Cf. *Rogan v. B. & O. R.R. Co.,* 188 Md. 44, 56, 52 A. 2d 261; *County Treas. v. State Tax Comm.,* 219 Md. 652, 657, 150 A. 2d 452.

## V

Finally, the appellee claims, without the citation of authority, that the appellant is estopped from prosecuting the suit by the fact that it and the county issued him building permits, and he has expended substantial amounts of money in partially constructing the dwelling. Some authorities hold that the principle of estoppel does not apply against a city, but the majority rule is to the effect that the doctrine of estoppel in pais is applied to municipal, as well as to private, corporations and individuals, at least where the acts of its officers are within the scope of their authority and justice and right require that the public be estopped. *Rose v. Baltimore,* 51 Md. 256; *Camden Sewer Co. v. Salisbury,* 162 Md. 454, 461, 160 A. 4; 9 McQuillin, *Municipal Corporations* (3rd ed.), § 27.56; 3 Dillon, *Municipal Corporations* (5th ed.), page 1893; Anno., 1 A.L.R. 2d 338; cf. *Gontrum v. City of Baltimore,* 182 Md. 370, 35 A. 2d 128. And it has been held that municipalities

may be estopped by reason of the issuance of permits. The authorities are collected in 2 Metzenbaum, *Law of Zoning,* (2nd ed.), beginning at page 1188. However, the cases and text-writers very generally state that a municipality is not estopped to set up the illegality of a permit. *Lipsitz v. Parr,* 164 Md. 222, 164 A. 743; 2 Metzenbaum, *op. cit.,* pp. 1143-1146, 1191, 1192; 1 Metzenbaum, *op. cit.,* pp. 163-171, 256-259, 466, 590, 591; 8 McQuillin, *op. cit.,* §§ 25.153; *Vogt v. Borough of Port Vue,* 85 A. 2d 688 (Pa. Super.) ; *Adler v. Department of Parks & Public Property,* 89 A. 2d 704 (N. J. Super.). And the issuance of an illegal permit creates no "vested rights" in the permittee. 2 Metzenbaum *op. cit.,* pp. 1185, 1186, 1193-1195; 8 McQuillin, *op. cit.,* § 25.153; *Colonial Beacon Oil Co., Inc. v. Finn,* 283 N. Y. S. 384; *Vogt v. Borough of Port Vue, supra;* cf. *Lipsitz v. Parr, supra.* We have held above that the permits issued to the appellee were in violation of the zoning ordinance; consequently they were unlawful and did not estop the appellant from prosecuting this suit.

This means that the order must be reversed; but, as the permits were issued and appellee has made substantial improvements as a result thereof, no final injunction should issue at this time. We will, therefore, remand the case for further proceedings without prejudice to the appellee to make application, within a reasonable time to be set by the chancellor, to the proper zoning authorities for possible relief by way of a special exception, variance or otherwise. The ultimate decision of the chancellor will be based upon the facts as he finds them upon final hearing, after the zoning authorities have acted upon this application.

> *Order reversed, and cause remanded for further proceedings not inconsistent with this opinion; appellee to pay the costs.*