## CAREY *v.* BALTIMORE COUNTY, MARYLAND

[No. 459, September Term, 1970.]

*Decided June 4, 1971.*

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SINGLEY and SMITH, JJ.

*Richard C. Murray,* with whom were *Cook, Mudd, Murray & Howard* on the brief, for appellant.

*B. Marvin Potler, Assistant County Solicitor,* with whom were *R. Bruce Alderman, County Solicitor,* and *Harry S. Shapiro, Assistant County Solicitor,* on the brief, for appellee.

FINAN, J., delivered the opinion of the Court.

The appellant and plaintiff below, Mr. George L.

Carey, filed an action at law seeking monetary damages from Baltimore County, Maryland, a municipal corporation (County). In his declaration Carey alleges that for some time he had been the owner of valuable real estate located in the 9th election district of Baltimore County and that during the year 1968 he made application for a building permit to construct a residence on a portion of his property. On May 17, 1968, he was issued a new building permit by the Department of Permits and Licenses of the County, which permit was extended to May 17, 1970. Carey further alleges that pursuant to the permit he "proceeded to make arrangements for construction and substantial sums of money were invested and that he obligated himself for additional sums of money in connection therewith." The declaration is ambiguous in its allegations as to whether or not construction had actually begun.

On January 6, 1970, the County Building Engineer notified Carey by letter to discontinue any work under the permit. This notification of January 6, 1970, was attached to his declaration as an exhibit and for a better understanding of this case we set forth the pertinent portions of this communication:

"Dear Mr. Carey:

As a result of a request by the Baltimore County Health Department as outlined in their inter-office communication with Mr. Gerard Dietz I am hereby ordering all work on building permit 86025 to stop. A copy of this communication is here enclosed.

"When you have met the requirements of the Health Department and notified this department in writing, you will be allowed to proceed . . .

Very truly yours,
/s/ Charles B. Wheeler
Building Engineer"

It is significant to note that Carey, although appending the above letter to the declaration, did not attach the inter-office memorandum which had been forwarded to him with this letter.

The inter-office communication appears in the appellee's appendix to their brief and reads:

"TO
    Mr. Gerald J. Dietz [Health Department]
FROM
    Mr. Thomas H. Devlin [Health Department]
SUBJECT
    Cancellation of Building Application No. 86025
                               January 2, 1970

Reference is made to Building Application No. 86025, for the construction of a dwelling on property owned by Mr. George L. Carey, III, on a private road near Malvern Avenue, Election District 9.

Satisfactory soil tests were conducted on high ground at the site indicated on the approved plot plan submitted to the Department of Health with the application. An inspection was conducted of this site on December, 1969, at which time it was discovered that the dwelling was under construction but located at a different location, in a swampy area where the soil is unsuitable for sewage disposal.

Careful examination of the Office Copy of the Building Application indicates that it *was undoubtedly altered* following approval by the Department of Health on May 5, 1968. This alteration was dated May 10, 1968, and signed by Mr. Carey, who scratched out the site approved by this office.

For these reasons, I am requesting that an order to stop construction on this dwelling be issued.

Your cooperation respecting the situation will be deeply appreciated.

/s/
Thomas H. Devlin, Director
BUREAU OF ENVIRONMEN-
TAL HEALTH."

Carey filed suit against the County on September 11, 1970, alleging that the County "has wrongfully stopped the plaintiff's construction and has therefore deprived him of all reasonable use of his property, has taken valuable property rights of the plaintiff without due process * * *," whereby he claimed $100,000 damages.

The County responded to the suit by filing a motion raising preliminary objection, and moving for a judgment in its favor on the ground that: "it [the County] has sovereign immunity against liability in the instant action as all of the facts alleged by the complainant could only have been committed in the exercise of a governmental function." A hearing was held on this motion which resulted in Proctor, J., dismissing the declaration.

In the opinion accompanying the order of dismissal the court recited the reasons why the County revoked the permit, namely, "that there is no satisfactory procedure for the disposition of sanitary sewerage; that the prior approval was either based on a location for the dwelling different from that on which the dwelling is being constructed, or error so far as whether the soil at the proposed location of the septic tank would satisfactorily pass a percolation test * * *." In its opinion the lower court also assumed that construction had commenced at the time of the revocation of the permit. Judge Proctor found that the defense of governmental immunity was not only properly raised by the motion raising preliminary objection, but that under Maryland Rule 323b, the County was required to raise such an issue by a preliminary motion. The trial court further relying on *Irvine v. Montgomery County,* 239 Md. 113, 118, 210 A. 2d 359 (1965),

and *Lipsitz v. Parr,* 164 Md. 222, 227, 164 A. 743 (1933), held in favor of the County, quoting *Irvine* to the effect, "* * * in issuing permits for construction a municipality is only exercising its governmental authority and is immune from action against it. * * *" The appeal taken by Carey questions the ruling of the lower court granting the dismissal of the declaration. We are of the opinion that the lower court should be affirmed.

On appeal, counsel for Carey argues that no evidence was presented at the hearing on the motion raising preliminary objection and that the reasons recited by the lower court in its opinion as to why the County revoked the permit "were based solely upon statements made by counsel," and were not part of the record. Indeed, there are two matters the clarification of which would have been of considerable aid to this Court in rendering its opinion. One is the matter just mentioned relative to the reasons for the revocation of the permit which appears nowhere in the record; the other is the status of the inter-office communication of the County Bureau of Environmental Health, which appears on page one of the appellee's appendix, and a copy of which was included in the original letter written by the County Buildings Engineer to Mr. Carey, notifying him that the permit was revoked. This inter-office communication not only sets forth the reasons for the revocation of the permit but also mentions that "the dwelling was under construction" at the time of the inspection which precipitated the revocation of the permit; however, nowhere in the record can this inter-office communication be found. Accordingly, our opinion will be predicated on the allegations as they appear in the appellant's declaration.

This case is controlled by the doctrine of sovereign immunity which applies when a municipality is called upon to respond in damages for an act performed in pursuit of a governmental function. The doctrine was clearly enunciated by this Court in recent years in *Irvine v. Montgomery County, supra.* The facts in that case are

not of a pattern which accommodates the facts in the instant case and although the suit was brought in equity seeking injunctive relief for continuing damages to the plaintiff's property, the language employed by the Court is quite apposite. In *Irvine,* the property owner alleged that the County approved the subdivision plat submitted by the private developer and issued building and road construction permits within the platted subdivision and that the excavation, grading and paving of streets pursuant to these plans had unlawfully diverted surface water so as to deny the property owner access to his land. The gravamen of the complaint was that the County had in the exercise of a proprietary function committed an act of public nuisance. Judge Oppenheimer writing for the Court held the actions on the part of the County to be a governmental function, stating:

> "* * * There can be no recovery in Maryland against a municipal corporation for injuries occasioned by its negligence or nonfeasance in the exercise of functions essentially governmental in character * * *.
>
> * * *
>
> "* * * However, in issuing permits for construction, a municipality is only exercising its governmental authority and is immune from action against it. * * * Even though the permits were for street construction, the municipal corporation is immune from liability for error of judgment unaffected by negligence. * * *." 239 Md. 117-118.

In 13 Am.Jur.2d, *Buildings* § 10 p. 275, it is stated:

> "A city, in attempting to revoke building permits, acts within its police or governmental power and is not liable in damages, although its act may be wrongful, nor are the members of a municipal council liable in damages for adopting

a resolution revoking a building permit, although the revocation is wrongful, in the absence of anything to show malice, corruption, dishonesty, or bad faith, since the act is of a judicial or quasi-judicial character. The proper remedy for a wrongful revocation of a building permit is by injunction or by mandamus."

Language of similar import is found in 18 McQuillin, *Municipal Corporations,* (3d ed.) § 53.37 wherein the author states: "Granting or refusing a municipal license is the exercise of governmental power and a municipality is not liable in damages for the wrongful issuance or refusal of a license * * *. So a municipality is not liable in damages for revoking a license, even where without any just cause, especially where the revocation is void."

Since the case at bar presents us with an action wherein the property owner seeks monetary damages against the municipality for the alleged wrongful revocation of a building permit, we need go no further than to determine the rights of the adversaries in the light of the defense of sovereign immunity and are not called upon to judge the case in relation to any vested rights acquired by the property owner in the permit, as may be the case were other remedies invoked.

We would observe, however, that even in those cases wherein the property owner has sought injunctive relief predicated on his acquisition of a vested right in the building permit, which has later been revoked or the work stopped through the intervention of municipal authorities because of a change in zoning or mistake in issuance of the permit, this Court has been reluctant to allow relief even where substantial sums have been spent on architectural fees and site preparation. See *Ross v. Montgomery County,* 252 Md. 497, 504, 250 A. 2d 635 (1969) ; *Francis v. MacGill,* 196 Md. 77, 85, 75 A. 2d 91 (1950) ; *Bogley v. Barber,* 194 Md. 632, 639, 72 A. 2d 17 (1950) ; *Kahl v. Consolidated Gas Company,* 191

Md. 249, 260, 261, 60 A. 2d 754 (1948) ; *Mayor & City Council of Baltimore v. Shapiro,* 187 Md. 623, 634, 51 A. 2d 273 (1947) ; *Anne Arundel County v. Snyder,* 186 Md. 342, 347, 46 A. 2d 689 (1946) ; *Lipsitz v. Parr,* 164 Md. 222, 227, 164 A. 743 (1933). Cf. *Peoples Counsel v. Public Service Comm'n,* 259 Md. 409, 417, 270 A. 2d 105 (1970). However, in keeping with the lower court's dismissal of the .declaration without prejudice to pursue other remedies, the following language employed by Judge Prescott (later Chief Judge) writing for the Court in *Berwyn Heights v. Rogers,* 228 Md. 271, 179 A. 2d 712 (1962), comes to mind:

> "Finally, the appellee claims, without the citation of authority, that the appellant is estopped from prosecuting the suit by the fact that it and the county issued him building permits, and he has expended substantial amounts of money in partially constructing the dwelling. Some authorities hold that the principle of estoppel does not apply against a city, but the majority rule is to the effect that the doctrine of estoppel in pais is applied to municipal, as well as to private, corporations and individuals, at least where the acts of its officers are within the scope of their authority and justice and right require that the public be estopped. *Rose v. Baltimore,* 51 Md. 256; *Camden Sewer Co. v. Salisbury,* 162 Md. 454, 461, 160 A. 4; 9 McQuillin, *Municipal Corporations* (3rd ed.), § 27.56; 3 Dillon, *Municipal Corporations* (5th ed.) page 1893; Anno., 1 A.L.R. 2d 338; cf. *Gontrum v. City of Baltimore,* 182 Md. 370, 35 A. 2d 128. And it has been held that municipalities may be estopped by reason of the issuance of permits. The authorities are collected in 2 Metzenbaum, Law of Zoning, (2nd ed.), beginning at page 1188. However, the cases and textwriters very generally state that a municipality

is not estopped to set up the illegality of a permit." 228 Md. 279-280.

It is also of interest to note, that in *Rubin v. City of New York,* 240 N.Y.S.2d 427 (Civ. Ct. City N. Y. 1963) *rev'd on other grounds,* 248 N.Y.S.2d 463 (App. Div. 1964), a property owner was allowed reimbursement for expenses incurred in an action against the City when it capriciously revoked a permit for sidewalk encroachments. The property owner had removed a sidewalk canopy and relocated a water valve when it was found that the revocation of the permit was totally unnecessary. The Court found that the action of the City was capricious, stating, "as Cardozo, J., indicated in a dissenting opinion not otherwise relevant, capricious conduct may be imputed to a municipality *(People ex rel City of New York v. N.Y.R. Co.,* 217 N. Y. 310, 319, 112 N. E. 49, 52)." It is, however, significant that there is nothing in the plaintiff's declaration in the instant case alleging that the action of the County was arbitrary or capricious. It is not intended by this observation to infer, that had such an allegation of capriciousness been made by the plaintiff, we would be prepared to pierce the cloak of governmental immunity. We confine ourselves to the facts as alleged in the present case.

In the case at bar, Carey relies on *Jarvis v. Mayor and City Council of Baltimore,* 248 Md. 528, 237 A. 2d 446 (1968), as a case in point establishing the liability of a municipality for wrongful acts done while performing a governmental function. We do not find *Jarvis* to be apposite. There, the property owner owned five houses, four of which were vacant and all of which were in a dilapidated condition. The City of Baltimore gave the owner notice to obtain within 30 days the necessary permits to either rectify the hazardous conditions of the dwellings or raze them. The owner took out the permits to repair the properties and 29 days of the 30 day period had expired without any work being accomplished. Upon complaints of residents, and attention having been

drawn to the conditions by virtue of a shooting in the neighborhood, the Mayor visited the premises on the 29th day and announced that remedial steps would be taken. An interval of a week elapsed between this date and the date upon which the City let a contract for the demolition of the houses. Two days later the demolition was completed. However, in the interim the owner had caused extensive repairs to be made to the houses. The owner had received no notice of the City's intent to raze the dwellings, had no opportunity to contest it, and no apparent emergency existed. The important element to note about *Jarvis* is that this Court, following the rationale of *Burns v. Midland*, 247 Md. 548, 553, 234 A. 2d 162 (1967), held that in such a situation as there presented, the municipality, although acting pursuant to its police powers, would only be absolved from following due process in the case of an actual emergency necessitating immediate action to protect the public health and safety, and absent such conditions the City was liable to respond in damages. The distinction between *Jarvis* and the case at bar is obvious. In *Jarvis*, sovereign immunity with regard to the act of razing the buildings, attached only in case of an emergency situation; whereas, with respect to the revocation of a building permit, as in the instant case, the act is cloaked with governmental immunity from its inception. *Cf. Hebron Savings Bank v. Salisbury*, 259 Md. 294, 300, 269 A. 2d 597 (1970), wherein a municipality's right to abate a public nuisance is discussed.

The appellant also raises in his brief the fact that the motion raising preliminary objection filed in the court below was not verified and that the defense of governmental immunity which the County raised should not have been available to it. Aside from the fact that this issue is urged for the first time on appeal and should not now be considered (Maryland Rule 885), we find it without merit. We view this matter strictly from the facts alleged in the declaration in light of the legal defense of governmental immunity. We think this defense

was properly raised and if the appellant had some question as to the form in which the motion raising preliminary objection was presented or to the propriety of the motion itself, the proper way to attack it would have been by a motion *ne recipiatur* or to strike (Maryland Rule 322).

We are aware that the lower court in dismissing the plaintiff's declaration did so with prejudice only as to any suit against the County for damages. This recognized, as we have indicated in this opinion, that other remedies may be available to him.

*Judgment affirmed, appellant
to pay costs.*