ALVIN SNYDER, HERBERT THALER AND HAROLD
CRONE, Co-Partners t/a Twin Lakes Partnership
*v.* STATE DEPARTMENT OF HEALTH AND
MENTAL HYGIENE et al.

[No. 1377, September Term, 1977.]

*Decided October 11, 1978.*

The cause was argued before Thompson, Davidson and
Melvin, JJ.

*Daniel W. Cagan* for appellants.

*Standish McCleary, III,* for appellee State Department of Health and Mental Hygiene. *John A. Austin, Assistant County Solicitor,* with whom was *J. Carroll Holzer, County Solicitor,* on the brief, for other appellee.

DAVIDSON, J., delivered the opinion of the Court.

In the Circuit Court for Baltimore County, Twin Lakes Partnership (Developer) sued, insofar as here relevant,[1] Baltimore County (County) for damages which occurred when the County refused to allow the Developer to "hook up" to the County's sewer system. In its declaration, the Developer alleged that on 4 November 1968 it acquired a parcel of land lying within the Gwynns Falls Drainage Basin in an area serviced by the County's sewer system. On 27 March 1969, the Developer received tentative approval of a plan to build 606 apartment units. on that land. A 172 unit highrise apartment building was constructed. Thereafter, the Developer changed its plans and sought approval of a preliminary plan to construct 109 townhouses instead of two highrise apartment buildings containing a total of 344 units. In July, 1973, the Baltimore County Office of Planning, the Department of Public Works, and the Deputy State and County Health Officers approved the preliminary plan. Other plats and plans for the project were approved by various State and County agencies. In February, 1974, on-site utility permits and a grading permit were issued and excavation began. By 30 April 1974, building permits for the 109 townhouses were issued. All charges relating to those permits were paid.

In the declaration it was further alleged:

"That as of May 14, 1974, the said project had progressed to a point where the plumbing contractor

---

1. The Developer concedes that its suits against Neil Solomon, M.D., Secretary of Health and Mental Hygiene, and certain individuals in their capacity as officials of the Baltimore County government were properly dismissed.

(Burgemeister-Bell) was to commence the sewerage hook-ups on that date. That on May 14, 1974, Neil Solomon, M.D. Secretary of Health and Mental Hygiene for the State of Maryland, signed an Order directing as follows:

'7. From and after the effective date of this Order, Baltimore City and Baltimore County shall not issue or grant or cause to be issued or granted . any connections contributary to the Gwynns Falls sewer system and the Baltimore Street Overflow Chamber at Baltimore Street and Ellicott Drive, except as provided in 8 below. Connection shall mean the physical pipe connecting the plumbing in the building to the public sewer in the street or right-of-way. Likewise, plumbing connected to private sewers which would empty into the public system also are included in this definition.'

"On May 24, 1974, the Defendant Solomon, issued a Supplemental Order directing:

'... from and after May 14, 1974, whether or not the permits of any kind whatsoever were then issued and outstanding, Baltimore City and Baltimore County shall not make, permit, or allow, or suffer to be made, permitted, or allowed, any physical connection from and to any pipe which connects or contributes to the Gwynns Falls sewer system.'

. . .

"That as of May 14, 1974, the Plaintiff had fully and completely complied with, including the payment of all charges, surcharges, taxes and fees, all administrative requirements of the above named

Defendants for the progression, development and construction of the Twin Lakes Project.

. . .

"That suddenly and without any prior warning to the Plaintiffs, the said Defendants, refused, as of May 14, 1974, to allow the Plaintiffs to hook up to the public sewerage system.

. . .

"[T]hat it was the responsibility of said Defendants to maintain the sewerage system within their jurisdiction in such condition as to accommodate the hook-up of the Plaintiffs' project in as much as the Defendants knew and approved Plaintiffs' project well in advance of the May 14, 1974, date. The Plaintiffs aver that the Defendants failed in this duty which they owed to the Plaintiffs."

Finally it was alleged that the County's action caused the Developer to suffer financial injury, including diminution in value of its property, costs and expenses of construction preceding the order, costs and expenses of legal counsel and lost profits.

The County filed a motion raising preliminary objection on the ground of governmental immunity. Judge H. Kemp MacDaniel entered an order sustaining the County's motion. We shall affirm.

## I

The novel question here presented is whether the defense of governmental immunity is available to a municipality which allegedly failed in its duty to maintain its sewers in such condition as to permit a property owner with a previously issued sewer connection permit [2] to hook up to the

---

2. The declaration does not specifically allege that as of 14 May 1974 the Developer had received the County's permission to connect to the sewer. The allegation that as of 14 May the Developer had complied with all "administrative requirements," including the payment of all charges and fees, supports, however, an inference that as of that date the Developer had received such permission.

municipality's sewer system. Because, in Maryland, in tort actions, the defense of governmental immunity is available to municipalities if the alleged tortious conduct occurred while the political subdivision was performing a "governmental" function, but is not available if the conduct occurred while it was performing a "proprietary" function,[3] we must decide whether the County was performing a governmental or proprietary function when it allegedly failed in its duty to maintain its sewer system so as to permit the Developer to hook up.

The Court of Appeals, in a number of cases, has held that a municipality is liable in tort for a direct physical injury to property resulting from a failure to maintain its sewers.[4] In only two of those cases, however, did that Court consider the nature of the functions a municipality performs when it is engaged in matters relating to sewer service.[5] In those two cases, the Court recognized that the nature of the function being performed differs depending upon whether the municipality is engaged in the process of determining whether to provide sewer service or is engaged in the process of constructing or operating a sewer system.

In *Hitchins Brothers v. Mayor of Frostburg*,[6] a property owner sued a municipality to recover for flood damage to his property caused by negligent maintenance of the public sewers. The Court said:

> "*[T]here is a class of powers defined as discretionary or* quasi *judicial, which the corporate authorities*

---

3. O & B, Inc. v. Maryland-National Capital Park & Planning Comm'n, 279 Md. 459, 462, 369 A. 2d 553, 554 (1977); Carey v. Baltimore County, 262 Md. 491, 496-97, 278 A. 2d 6, 8 (1971); Mayor of Baltimore v. State, *ex rel.* Blueford, 173 Md. 267, 271-72, 195 A. 571, 574 (1937); Herilla v. Mayor of Baltimore, 37 Md. App. 481, 484-86, 378 A. 2d 162, 165-66 (1977).

4. *See* True v. Mayor of Westernport, 196 Md. 280, 284, 76 A. 2d 135, 136 (1950); Mayor of Salisbury v. Camden Sewer Co., 141 Md. 254, 118 A. 662 (1922); Kurrle v. Mayor of Baltimore, 113 Md. 63, 77 A. 373 (1910); Guest v. Commissioners of Church Hill, 90 Md. 689, 693-94, 45 A. 882, 883-84 (1900); Mayor of Baltimore v. Schnitker, 84 Md. 34, 43, 34 A. 1132, 1132-33 (1896) (dicta); Mayor of Frostburg v. Dufty, 70 Md. 47, 54, 16 A. 642, 643 (1889) (dicta); Mayor of Frostburg v. Hitchins, 70 Md. 56, 66, 16 A. 380, 381-82 (1889); Hitchins Bros. v. Mayor of Frostburg, 68 Md. 100, 109-10, 11 A. 826, 829 (1887); Kranz v. Mayor of Baltimore, 64 Md. 491, 497, 2 A. 908, 910 (1886).

5. *See* Mayor of Frostburg v. Hitchins, 70 Md. 56, 16 A. 380 (1889); Hitchins Bros. v. Mayor of Frostburg, 68 Md. 100, 11 A. 826 (1887).

6. 68 Md. 100, 11 A. 826 (1887).

*cannot be compelled to execute. As, for instance, the
opening, widening or extension of streets, the
adoption of a particular grade, or the adoption of any
particular plan for improvement, and the like,* un-
less the terms of the statute are imperative. But
any particular plan that may be adopted must be a
reasonable one, and the manner of its execution
thence becomes, with respect to the right of the
citizen, a mere ministerial duty; and for any
negligence or unskillfulness in the execution or
construction of the work, whereby injury is inflicted
upon private right, the municipality will be held
responsible." [7]

In a similar case, *Mayor of Frostburg v. Hitchins,*[8] the Court
said:

"*The power* under its charter *to grade streets and
build culverts and sewers, is a discretionary power,
to be exercised by the city authorities whenever in
their judgment the public good required it. For the
non-exercise of such a power no action it is true will
lie,* but if they undertake to build a culvert or sewer
for the purpose of carrying off the surface water and
drainage, they are bound to exercise reasonable care
in the execution of the work. And if by reason of the
negligent construction of a sewer, the drainage
instead of being able to flow through it, dams up at
its mouth, and is discharged with destructive force
upon the property of an adjacent owner, the
corporation is answerable for the injury." [9]

*Hitchins Brothers* and *Mayor of Frostburg* establish that
after a municipality has determined to provide sewer service,
it has a duty to exercise reasonable care in the construction
and maintenance of the system. When engaged in those
activities, the municipality is performing a proprietary
function and is liable for its negligence.

---

7. *Id.* at 109-10, 11 A. at 829 (emphasis added).
8. 70 Md. 56, 16 A. 380 (1889).
9. *Id.* at 66-67, 16 A. at 381 (emphasis added).

While these cases hold that a municipality is liable for a direct physical injury to property resulting from a failure to maintain its sewers, they also indicate that a municipality has no duty to provide sewer service.[10] Decisions as to whether, when or where to provide sewer service, like other plans for public improvements, are matters of discretion. Accordingly, we conclude that when a municipality decides whether to provide such service, it is performing a governmental function, and is not liable for failing to provide sewer service. Courts in other States [11] and the authorities [12] agree.

In an analogous situation, some few courts and authorities have recognized that a determination to abandon or discontinue sewer service, like a determination to provide such service, is a matter of municipal discretion. They conclude that a municipality is not liable for direct physical injury to property resulting from an abandonment or discontinuance of sewer service, if the property is left in no worse condition than before the sewer was provided.[13] As stated by the Supreme Court of New Mexico in *Martinez v. Cook*: [14]

"It seems to be a settled principle of law that the establishment of a drain by a municipal corporation is the exercise of a legislative or quasi-judicial power, and the legislative body of the municipality is the sole judge of the necessity therefor. . . .

"It seems to be equally well settled that the abandonment or discontinuance of a drain constructed by a municipal corporation will not

---

**10.** *See* County Comm'rs of Baltimore County v. Hunter, 207 Md. 171, 183, 113 A. 2d 910, 915 (1954) (dicta); *but see* Mayor of Baltimore v. Brack, 175 Md. 615, 623, 3 A. 2d 471, 475 (1938) (dicta).

**11.** *See, e.g.,* Richards v. City of Tustin, 37 Cal. Rptr. 124, 125, 225 Cal.App.2d 97, 98 (1964); Elledge v. City of Des Moines, 259 Iowa 284, 288, 144 N.W.2d 283, 286 (1966); Beck v. City of New York, 199 N.Y.S.2d 584, 589 (1960).

**12.** *See, e.g.,* 18 E. McQuillin, *Municipal Corporations,* §§ 53:22g, 53:119 (3d rev. ed. 1977); 57 Am.Jur.2d *Municipal, School and State Tort Liability* § 201 (1971); 63 C.J.S. *Municipal Corporations* § 1049a (1950).

**13.** *See, e.g.,* Finley v. City of Kendallville, 45 Ind. App. 430, 431, 90 N. E. 1036, 1037 (1910); Martinez v. Cook, 56 N. M. 343, 353, 244 P. 2d 134, 140 (1952); 18 E. McQuillin, *supra* note 12, at § 53:120.

**14.** 56 N. M. 343, 244 P. 2d 134 (1952).

render the municipality liable for injuries to property resulting from the abandonment if the property was not left in any worse condition than it was before the sewer or drain was constructed." [15]

Finally, in Maryland, the Court of Appeals has held that in determining whether to issue or revoke a permit, a municipality is performing a governmental function and, therefore, is not liable in tort.[16] For example, in *Carey v. Baltimore County,*[17] a property owner alleged that he was damaged because, after he had been issued a building permit to construct a house, and had made arrangements for construction and had invested substantial sums of money, the permit was revoked. The Court determined that in revoking the permit the County was performing a governmental function. In reaching this result, the Court, quoting from the case of *Irvine v. Montgomery County,*[18] said:

"[I]n issuing permits for construction, a municipality is only exercising its governmental authority and is immune from action against it." [19]

It quoted also from 18 E. McQuillin, *Municipal Corporations,*[20] saying:

"Granting or refusing a municipal license is the exercise of governmental power and a municipality is not liable in damages for the wrongful issuance or refusal of a license * * *. So a municipality is not liable in damages for revoking a license, even where without any just cause, especially where the revocation is void." [21]

---

**15.** *Id.* at 352, 244 P. 2d at 140 (citations omitted).
**16.** *See* Spriggs v. Levitt & Sons, Inc., 267 Md. 679, 685-86, 298 A. 2d 442, 445-46 (1973); Carey v. Baltimore County, 262 Md. 491, 495-97, 278 A. 2d 6, 8-9 (1971); Irvine v. Montgomery County, 239 Md. 113, 118, 210 A. 2d 359, 361 (1965); Lipsitz v. Parr, 164 Md. 222, 227, 164 A. 743, 745-46 (1933).
**17.** 262 Md. 491, 278 A. 2d 6 (1971).
**18.** 239 Md. 113, 210 A. 2d 359 (1965).
**19.** 262 Md. at 496, 278 A. 2d at 8 (quoting 239 Md. at 118, 210 A. 2d at 361).
**20.** 18 E. McQuillin, *Municipal Corporations,* (3d ed. 1949).
**21.** 262 Md. at 497, 278 A. 2d at 9 (quoting 18 E. McQuillin, *Municipal Corporations,* § 53:37 (3d ed. 1949)).

The rationale underlying these decisions would appear to be that because a municipality has no duty to issue permits, the granting or revocation of a permit is a matter of discretion and, consequently, a governmental function.[22]

Applying these principles to the instant case produces a clear result. Here it was alleged that the municipality was negligent because it failed in its duty to maintain the sewer system "in such condition as to accommodate the hook-up of [the Developer's] project." The alleged damage was an inability to develop the property as planned. The gravamen of the alleged wrong was not that the Developer suffered a direct physical injury to its property resulting from the County's negligence in failing to maintain its sewers. Rather it was that the Developer became unable to develop its property as a result of a County action, which might be characterized alternatively as a failure to provide sewer service, a discontinuance of sewer service or a revocation of a sewer connection permit. Because the County, when determining whether to provide sewer service, discontinue sewer service or revoke a permit, was performing a governmental function, it is not liable in tort. The defense of governmental immunity is available to the County.

## II

The Developer's contention that the County breached a contract to provide sewer service will not be considered. In its declaration, the Developer did not allege a breach of contract. The trial court did not decide whether there was a contract that was breached. The issue is not properly before us.[23]

## III

The Developer's contention that the defense of governmental immunity is not available because "there is insurance coverage applicable to the acts complained of" is

---

22. *See generally* 18 E. McQuillin, *supra* note 12, at § 53:22e.
23. Md. Rule 1085.

without merit. In the absence of a statute, a County does not become liable for torts because it carries insurance.[24] There being no applicable statutory provision, the County did not waive the defense of governmental immunity by carrying insurance.

*Judgment affirmed.*
*Costs to be paid by appellants.*

---

24. Quecedo v. Montgomery County, 264 Md. 590, 594, 287 A. 2d 257, 259 (1972).